Argued and submitted November 28, 2000, affirmed September 12, 2001

In the Matter of the Compensation of
Olive M. Bonham, Claimant.

EVANGELICAL LUTHERAN GOOD
SAMARITAN SOCIETY,
*Petitioner,*

*v.*

Olive M. BONHAM,
*Respondent.*

97-10265; A108160

32 P3d 899

Jerald P. Keene argued the cause and filed the brief for petitioner.

G. Duff Bloom argued the cause for respondent. With him on the brief was Cole, Cary, Wing & Bloom, P.C.

Before, Haselton, Presiding Judge, and Wollheim, Judge, and Ceniceros, Senior Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

Employer seeks judicial review of a Workers' Compensation Board order that concluded that claimant had established the compensability of a herniated disc claim. Employer argues that claimant's herniated disc claim was precluded by principles of issue and claim preclusion. We affirm.

Claimant suffered a compensable low-back strain in May 1993. A subsequent MRI contained indications of disc space narrowing, slight to moderately severe spinal stenosis, and a disc bulge. In June 1993, Dr. Perry diagnosed lumbar strain with associated mild to moderate L4-5 disc herniation. A determination order closed the claim with an award of temporary compensation in August 1993.

In September 1996, claimant had a medical evaluation for chronic low-back pain. An MRI taken in November 1996 showed that claimant had severe spinal stenosis and a central disc herniation. Claimant saw several physicians during the last months of 1996 and the first several months of 1997. Employer denied claimant's aggravation claim in March 1997 and amended the denial in June 1997. The basis for employer's amended denial was that it found that claimant's "current condition (lumbar stenosis) and need for medical treatment" was unrelated to claimant's May 1993 low-back strain. Claimant requested a hearing from both denials.

In June 1997, a hearing was held before Administrative Law Judge Hazelett. In October 1997, Hazelett issued an opinion and order that upheld both denial letters on the basis that claimant did not prove that her accepted strain injury was the cause of her current condition. Claimant did not appeal that order.

In November 1997, claimant began treatment with Dr. Misko. Misko reviewed claimant's MRIs, had flexion-extension "stress" films taken of claimant's back, and diagnosed claimant with a herniated disc.[1] Misko then filed an

---

[1] Both parties, at various times, refer to the L4-5 condition as a herniated disc and as a disc protrusion, sometimes within the same document. For consistency, we refer to the condition as a L4-5 herniated disc throughout this opinion.

aggravation claim form. In December 1997, employer denied that claim on the basis that there was "no medical evidence that there ha[d] been a change in [claimant's] medical condition due to the industrial injury" since the March 1997 and June 1997 denials were issued. Claimant requested a hearing on that denial. In January 1998, Misko performed surgery for a large disc herniation at L4-5. In July 1998, claimant requested that employer accept a new condition claim for a herniated disc that arose as a consequence of the May 1993 industrial injury. In September 1998, employer denied the L4-5 disc herniation claim on the basis that the medical evidence did not establish that the condition was caused by the industrial injury and that "it was previously determined that your 'current condition' was not caused by the industrial injury" of May 1993. Claimant again requested a hearing.

In January 1999, Administrative Law Judge Menashe issued an opinion and order that affirmed employer's December 1997 and September 1998 denials. Menashe concluded that Hazelett "determined [that] the issue was compensability of the current condition and not just spinal stenosis." Therefore, Menashe explained, because claimant's then current condition included the L4-5 disc herniation, issues concerning the L4-5 disc herniation were or could have been litigated at the June 1997 hearing. Consequently, Menashe concluded that the compensability of claimant's L4-5 herniated disc claim was precluded from further litigation. Claimant sought review of Menashe's order.

In a divided opinion, the Board reversed Menashe's order but adopted Menashe's findings of fact. It agreed that Hazelett had decided the compensability of claimant's entire current low-back condition and not just the spinal stenosis condition. However, the Board disagreed with Menashe over the application of preclusion principles to claimant's case. After summarizing the general rules governing claim and issue preclusion, the Board construed the language of ORS 656.262(7)(a) and concluded that the legislature created an exception to claim preclusion when it enacted that statute.[2] Then, after explaining that the legislature did not create a statutory exception to issue preclusion in ORS 656.262(7)(a),

---

[2] ORS 656.262(7)(a) is set out later in this opinion.

the Board concluded that issue preclusion did not apply to claimant's current claims because the compensability of claimant's L4-5 disc herniation had not been "actually litigated and determined" in the proceeding before Hazelett. The Board then turned to the merits of claimant's herniated disc claim. It found Misko's opinion persuasive and concluded that claimant had established the compensability of her L4-5 herniated disc and had also met her burden of proving a compensable aggravation claim.

Employer seeks judicial review. First, employer assigns as error the Board's failure to rule that the doctrine of issue preclusion barred claimant from relitigating the compensability of her L4-5 herniated disc condition. Second, employer argues that the Board erred when it concluded that ORS 656.262(7) legislatively overruled the doctrine of claim preclusion as it applies to new medical condition claims. Claimant responds that the Board did not err in either instance and that we should affirm the Board's decision.

■ As a preliminary matter, we note that both issue preclusion and claim preclusion generally apply to workers' compensation proceedings. *Drews v. EBI Companies*, 310 Or 134, 142, 795 P2d 531 (1990). At issue here is how those doctrines apply to new medical condition claims and whether any of the exceptions to the rules of issue and claim preclusion are applicable in this instance. *See id.* at 149 (concluding existence of statutory exception to issue and claim preclusion for aggravation claims exists in specific instances).

■ We first address the issue of whether the Board erred in holding that ORS 656.262(7)(a) provides a statutory exception to the judicial doctrine of claim preclusion for new medical condition claims. In *Rennie v. Freeway Transport*, 294 Or 319, 323, 656 P2d 919 (1982), the Supreme Court described claim preclusion as follows:

> "[A] plaintiff who has prosecuted one action against a defendant through to a final judgment * * * is barred * * * from prosecuting another action against the same defendant where the claim in the second action is one which is based on the same factual transaction that was at issue in the first, seeks a remedy additional or alternative to the one

"sought earlier, and is of such a nature as could have been joined in the first action."

Importantly, claim preclusion requires neither that an issue of law or fact be actually litigated nor that the determination of an issue be essential to the final or end result of the proceeding. *Drews*, 310 Or at 140. What is essential for application of the rules of claim preclusion is that the particular issue was present in a proceeding that afforded the parties an opportunity to litigate that issue in a forum that rendered a final determination. *Id.*

Turning to the statute at issue here, ORS 656.262(7)(a) provides:

"After claim acceptance, written notice of acceptance or denial of claims for aggravation or new medical conditions shall be furnished to the claimant by the insurer or self-insured employer within 90 days after the insurer or self-insured employer receives written notice of such claims. New medical condition claims must clearly request formal written acceptance of the condition and are not made by the receipt of a medical claim billing for the provision of, or requesting permission to provide, medical treatment for the new condition. The worker must clearly request formal written acceptance of any new medical condition from the insurer or self-insured employer. The insurer or self-insured employer is not required to accept each and every diagnosis or medical condition with particularity, so long as the acceptance tendered reasonably apprises the claimant and medical providers of the nature of the compensable conditions. *Notwithstanding any other provision of this chapter, the worker may initiate a new medical condition claim at any time.*" (Emphasis added.)

Employer argues that ORS 656.262(7)(a) was intended to protect a worker's right to raise or initiate new medical conditions "at any time" without regard to other *statutory* provisions that might otherwise prohibit the worker from initiating a claim. Employer contends that, because claim preclusion is an independently derived *judicial* doctrine and not a statutory provision, ORS 656.262(7)(a) does not prevent the application of claim preclusion principles after a new claim has been initiated. In support of its argument, employer posits that principles of preclusion (both claim and

issue) are an essential feature of litigation in our system of jurisprudence. Employer further posits that whenever the legislature decides to create statutory exceptions to preclusion principles, it uses unambiguous language to do so. Claimant responds that ORS 656.262(7)(a) unambiguously creates an exception to claim preclusion and that, even if the language were ambiguous, the legislative history demonstrates a legislative intent to protect an injured worker's right to file a new medical condition claim despite principles of claim preclusion.

■■ We begin by examining the text and the context of ORS 656.262(7)(a), giving words of common usage their "plain, natural, and ordinary meaning." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). If the statute is ambiguous after that first level of analysis, we turn to the second level of statutory analysis, legislative history, and if the statute still remains ambiguous, then to the third level of analysis, maxims of statutory construction. *Id.* at 612-13. Our task is to discern the intent of the legislature. *Id.* at 610. The statutory language at issue here is the sentence, "Notwithstanding any other provision of this chapter, the worker may initiate a new medical condition claim at any time."

The core of the sentence are the words "the worker may initiate a new medical condition claim at any time." Its plain meaning is unambiguous and does not need a labored analysis. The terms "claim" and "worker" are defined at ORS 656.005(6) and (30) and the ordinary meaning of the term "initiate" is to begin.[3] None of those terms is unusual or exceptional. Likewise, the term "new medical condition" is well established within context of workers' compensation claims. The operative language here is "at any time." We conclude that the legislature intended those words to mean what they expressly state—that a worker may begin a claim for a new medical condition *at any time*.

---

[3] ORS 656.005(6) defines "claim" as "a written request for compensation * * * or any compensable injury of which a subject employer has notice or knowledge." ORS 656.005(30) defines "worker" as "any person * * * who engages to furnish services for a remuneration, subject to the direction and control of an employer[.]"

The beginning phrase the sentence reinforces and expands is the notion that a new medical condition claim may be filed at *any* time. The meaning of "notwithstanding any other provision of this chapter" is similarly unambiguous. The function of that "notwithstanding" phrase is to except the remainder of the sentence from other provisions of law contained in ORS chapter 656. *O'Mara v. Douglas County*, 318 Or 72, 76, 862 P2d 499 (1993). Thus, the "notwithstanding" clause expands the scope of the remainder of the sentence by insulating it from restrictions that might otherwise be imposed by other provisions in ORS chapter 656. Consequently, the legislature's intention to allow new medical condition claims to be filed at *any* time is reinforced by the "notwithstanding" clause.

We therefore conclude that the text of ORS 656.262(7)(a) unambiguously allows a claimant to initiate a new medical condition claim at any time. Furthermore, we find nothing in the context of that provision that would indicate a different legislative intent. Because the legislature's intent is clear from our examination of the text and context of the statute, our inquiry ends there. *PGE*, 317 Or at 611.

■■ Having concluded that ORS 656.262(7)(a) unambiguously allows a claimant to initiate a new medical condition claim at any time, the issue arises whether that language bars application of the rules of claim preclusion to a new medical condition claim. We hold that it does. Employer argues that, because claim preclusion is a *judicial* doctrine, the "notwithstanding" clause, with its specific reference to *statutory* provisions, does not bar the application of claim preclusion. We disagree. The legislature has the authority to adopt a statutory exception to the doctrine of claim preclusion. *Drews*, 310 Or at 141-42. Our role is to ascertain the intent of the legislature and to give effect, if possible, to all provisions within a statute. ORS 174.010; ORS 174.020. The express language of the statute provides that a worker may initiate a new medical condition claim at *any* time. That express language is contrary to the underlying principle of claim preclusion that, if a party could have raised an issue in a prior proceeding and did not, that party is precluded from raising it in a subsequent proceeding. There is nothing in the text or context of ORS 656.262(7)(a) that indicates that the legislature

did not intend, as the express language indicates, for the statute to bar the application of claim preclusion principles to new medical condition claims. Indeed, to belabor the point, the legislature intended for a worker to be able to initiate a new medical condition claim at *any* time. If we were to adopt the employer's interpretation, we would not be giving effect to the explicit "at any time" language that the legislature chose to use, because a worker would be *prevented* from initiating a new medical condition claim any time that the worker had an opportunity to initiate that claim in an earlier proceeding. Adopting that interpretation would, in effect, allow a court-created doctrine to overrule the explicit language of the statute and be contrary to the legislature's intent. We therefore hold that ORS 656.262(7)(a) bars the application of claim preclusion principles to new medical condition claims and affirm on the second assignment of error.

We next address the issue of whether the Board erred in holding that claimant's new medical condition claim for an L4-5 herniated disc was not barred by issue preclusion. Issue preclusion precludes future litigation on a particular subject issue only if that issue was "actually litigated and determined" in a context where the determination of that issue was essential to the final decision reached. *Id.* at 139. The rules of issue preclusion can apply equally to issues of fact and issues of law. *Id.* at 140. The Board concluded that principles of issue preclusion can apply to new medical condition claims. We agree.

Unlike the case with claim preclusion, the text and context of ORS 656.262(7)(a) do not indicate a legislative intent to bar application of issue preclusion principles. Because issue preclusion requires the *actual* litigation of an issue—in this instance, the new medical condition claim for an L4-5 herniated disc—there is no conflict between the application of the statute and the judicial doctrine of issue preclusion. The overriding purpose of ORS 656.262(7)(a) is for new medical condition claims to be litigated. In order for issue preclusion to apply, a new medical condition claim must not only be initiated, the claim must also have been fully litigated. The application of issue preclusion principles is entirely consistent with the purpose and application of ORS 656.262(7)(a). Understood in a different manner, once a new

medical condition claim has been initiated and fully litigated, a later claim for that *same* medical condition is no longer "new" and the concerns expressed by ORS 656.262(7)(a)—that new medical condition claims not be prevented from being litigated—are no longer pertinent. Consequently, we hold that applying principles of issue preclusion to new medical condition claims is not barred by ORS 656.262(7)(a).

 Turning to the case before us, the issue becomes whether claimant's L4-5 herniated disc condition was actually litigated in the proceeding before Hazelett. The Board found that it was not, but employer argues that it was. Whether claimant's herniated disc constituted a new medical condition is a question of fact for the Board to determine. *SAIF v. Tull*, 113 Or App 449, 832 P2d 1271 (1992) (what is a condition is a question of fact that the Board must decide). *See also Ware v. SAIF*, 7 Or App 571, 572, 492 P2d 484 (1972) (determination of whether a claimant suffers from a particular condition is a question of fact). We review that determination for substantial evidence. "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c). We conclude that substantial evidence exists in the record to support the Board's conclusion that, although Hazelett's opinion addressed claimant's lumbar stenosis and current condition, claimant's L4-5 herniated disc condition was not part of that current condition determination. Consequently, claimant's L4-5 herniated disc condition was not "actually litigated and determined" at the first hearing, nor was it essential to the final decision reached by Hazelett. We therefore hold that issue preclusion did not bar claimant's new medical condition claim for an L4-5 herniated disc and affirm.

Affirmed.