Argued and submitted October 10, 2011, affirmed November 7, 2012

OREGON EDUCATION ASSOCIATION,
an Oregon nonprofit corporation,
*Plaintiff-Respondent,*
*and*

STATE OF OREGON,
*Intervenor-Respondent,*
*v.*

OREGON TAXPAYERS UNITED,
an Oregon political committee, and
Oregon Taxpayers United Education Foundation,
an Oregon nonprofit corporation,
*Defendants-Appellants,*
*and*

Bill SIZEMORE
and Give Seniors a Break PAC,
*Debtors-Appellants,*
*and*

OREGON TAXPAYERS UNION
and John Does 2 through 10,
*Defendants.*

AMERICAN FEDERATION OF TEACHERS,
OREGON, AFT, AFL-CIO,
an Oregon unincorporated association,
*Plaintiff-Respondent,*
*and*

STATE OF OREGON,
*Intervenor-Respondent,*
*v.*

OREGON TAXPAYERS UNITED PAC,
an Oregon political committee, and
Oregon Taxpayers United Education Foundation,
an Oregon nonprofit corporation,
*Defendants-Appellants,*
*and*

Bill SIZEMORE
and Give Seniors a Break PAC,
*Debtors-Appellants,*
*and*

OREGON TAXPAYERS UNION
and John Does 2 through 10,
*Defendants.*

Multnomah County Circuit Court
001212632, 010808942; A143460

291 P3d 202

Nathan R. Rietmann argued the cause and filed the briefs for appellants.

Gregory A. Hartman argued the cause for respondents Oregon Education Association and American Federation of Teachers, Oregon, AFT, AFL-CIO. With him on the brief were Michael J. Morris and Bennett, Hartman, Morris & Kaplan, LLP.

Judy C. Lucas, Senior Assistant Attorney General, argued the cause for respondent State of Oregon. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Brewer, Judge, and Nakamoto, Judge.*

BREWER, J.

---

* Brewer, J., *vice* Wollheim, J.

**BREWER, J.**

In this consolidated appeal, defendants Oregon Taxpayers United, Oregon Taxpayers United Education Foundation, Give Seniors a Break PAC, and Bill Sizemore challenge two judgments holding them in contempt for violating the terms of an injunction issued pursuant to the Oregon Racketeer Influence and Corrupt Organizations Act (ORICO). ORS 166.715 - 166.735. Defendants raise four assignments of error, arguing that the trial court erred in (1) holding them in contempt for violating an injunction that they assert was invalid for lack of jurisdiction; (2) interpreting provisions of the injunction in a manner that violates the Oregon and United States constitutions; (3) concluding that defendants' constitutional challenges were precluded; and (4) holding that defendants willfully violated the injunction. We conclude that defendants have made no cognizable jurisdictional challenge, that the trial court did not err in concluding that defendants were precluded in these proceedings from challenging the constitutionality of the injunction, and that the trial court did not err in determining that defendants willfully violated the injunction. Therefore, we affirm.

This opinion marks nearly a decade of litigation between these parties relating to defendants' efforts to place initiatives on the ballot. The Supreme Court has affirmed the underlying ORICO judgment in this action. *American Fed. Teachers v. Oregon Taxpayers United*, 345 Or 1, 189 P3d 9 (2008) (*AFT II*). We also have previously addressed issues concerning the injunction that the trial court included in the underlying judgment in this action. *American Fed. Teachers v. Oregon Taxpayers United*, 208 Or App 350, 145 P3d 1111, *adh'd to as modified on recons*, 209 Or App 518, 149 P3d 159 (2006), *rev den*, 345 Or 95 (2008) (*AFT I*); *OEA v. Oregon Taxpayers United*, 227 Or App 37, 204 P3d 855 (2009) (*AFT III*). Because we conclude that certain previous adjudications in this action and another action are binding and preclusive in this appeal, we begin with a procedural history.

In the underlying action, plaintiffs Oregon Education Association (OEA) and American Federation of Teachers (AFT) brought an ORICO claim against the Oregon

Taxpayers United Political Action Committee (OTU-PAC) and the Oregon Taxpayers United Education Foundation (OTU-EF), alleging three counts of forgery, fraud, and other violations concerning initiative ballot measure activities and election law filings. After the jury reached its verdict, the state intervened and joined plaintiffs in seeking injunctive relief against defendants. In 2003, the trial court made extensive additional findings of fact and conclusions of law, followed by the entry of a money judgment in favor of plaintiffs and an injunction barring defendants and their successors from engaging in certain activities.

Paragraph 7 of the injunction (paragraph 7), which is at issue in this appeal, restricted the activities of OTU-PAC, OTU-EF, and their "successor organizations," which the injunction defined as any 501(c)(3) organization or political action committee in which Sizemore was a manager, officer, director, trustee, or controlling person. Paragraph 7 provided:

"OTU-PAC and OTU-EF and their successor organizations and successor political action committees which are joined referred to herein as 'OTU successors' are hereby enjoined from transferring or destroying any of their assets, whether cash, personal property or real property, and including documents, computers, and computer hardware, software and files, and are so enjoined until the judgment entered in this action is fully satisfied or until further order of this Court."

Defendants appealed the judgment, arguing, among other things, that the injunction embodied an unconstitutional prior restraint of political activities that are protected under Article I, section 8, and Article IV, sections 1 and 2, of the Oregon Constitution, and that the trial court erroneously enjoined "successor organizations" who were not parties to this litigation from engaging in various activities. *AFT I*, 208 Or App at 374. We affirmed the trial court's rulings with one exception.[1] We reversed the

---

[1] We declined to address defendants' constitutional challenges to the scope of the injunction, because those challenges lacked any concrete application to the appeal. *AFT I*, 208 Or App at 378. Nor did we address defendants' assertion that the injunction erroneously applied to "successor organizations" who were not parties to the litigation, because defendants presented no justiciable controversy between the parties regarding the scope of the injunction as to nonparties, and because

trial court's denial of defendants' motion to dismiss a count against OTU-PAC based on "unsworn falsification." *Id.* at 353. Because we could not determine whether the trial court would have entered paragraph 7 of the injunction against OTU-PAC without reference to that claim, we vacated that provision and remanded as to OTU-PAC. *Id.* at 375-76. The Supreme Court affirmed our decision.[2] *AFT II*, 345 Or at 4. On remand, in March 2009, the trial court concluded that paragraph 7 of the injunction still applied to OTU-PAC under the first count of plaintiffs' ORICO claim.

In the period between the jury's verdict and the trial court's entry of the judgment containing the injunction in 2003, Sizemore transferred assets to a newly formed successor organization, the Oregon Taxpayers Union (referred to as OTU2-PAC). *AFT III*, 227 Or App at 42. While *AFT I* and *AFT II* were pending in the appellate courts, plaintiffs then brought a contempt proceeding against OTU-PAC and Sizemore for violating paragraph 7 of the injunction (*AFT III*). Defendants raised an affirmative defense that, to the extent that the injunction restricted Sizemore in his individual capacity from engaging in political activity, it infringed on his right to free speech under the Oregon and United States constitutions. The trial court found that the specific provisions of the injunction applied to Sizemore as a "high-managerial agent" of OTU-PAC, OTU-EF, and OTU2-PAC, who was actively involved in the wrongdoing. When it held Sizemore in contempt despite defendants' constitutional challenges, the court implicitly rejected the premise that applying paragraph 7 to Sizemore or successor organizations who were nonparties to the underlying case would violate their free speech rights. Sizemore appealed the trial court's judgment but did not raise the constitutional issues on appeal.

On appeal in *AFT III*, we affirmed the trial court's judgment, noting that, "[a]lthough Sizemore is not

nonparties affected by the injunction had adequate legal remedies available to them. *Id.* at 376-77 (citing *Polygon Northwest Co. v. NSP Development, Inc.*, 194 Or App 661, 667-69, 96 P3d 837 (2004)).

[2] We issued our opinion on October 4, 2006, but, because defendants sought review in the Supreme Court, the appellate judgment was not entered until November 18, 2008.

a defendant in the underlying case, he is the controlling party of both OTU-PAC and OTU-EF, and the trial court held him liable for their violations of the injunction." *AFT III*, 227 Or App at 40 n 1. We concluded that the injunction properly applied to Sizemore, because an important purpose of the injunction was to prevent Sizemore from resuming his racketeering activities, and not merely to protect the plaintiffs' interests in the assets of OTU-PAC and OTU-EF in order to satisfy the money judgment. *Id.* at 51.

In November 2004, 16 months after the injunction was entered, and while the appeals were pending in *AFT I* and *AFT II*, Sizemore filed a "motion for relief from injunction order" (*AFT IV*) in the trial court. In that motion, Sizemore sought permission to engage in various initiative-related activities; he argued that, if the injunction proscribed such activities, it would violate his constitutional rights. Sizemore requested a narrow reading of paragraph 7, arguing that, by the breadth of its terms, paragraph 7 enjoined any political action committee that Sizemore controlled from spending money, distributing printed materials, or engaging in other customary activities of political committees, and thereby prevented him from exercising his constitutional speech and initiative rights. The trial court denied the motion, and Sizemore did not appeal.

In March 2007, before the appellate judgment in *AFT II* was entered, Sizemore filed a separate action against AFT and OEA, seeking relief from the injunction on constitutional grounds. *Sizemore v. American Federation of Teachers*, Multnomah County, Case No. 0703-03206 (*Sizemore v. AFT*).[3] In his complaint, Sizemore alleged that paragraphs 5 and 8 of the injunction violated (1) his right to due process under the Fourteenth Amendment of the United States Constitution "because [they purported] to restrain him *in personam* even though he was not a party to the case"; (2) his freedom of speech under Article I, section 8, of the Oregon Constitution, and the First Amendment to the United States Constitution, because "[they precluded]

---

[3] It bears emphasis, for purposes of our discussion of the application of the claim preclusion and law of the case doctrines below, that, unlike in *Sizemore v. AFT*, the adjudications in *AFT I* through *IV* were made in appellate or post-trial proceedings in the underlying action in which the injunction was entered.

him from participating in the direction or control of charitable education, or religious organizations if such organizations provide 'anything of value' to 'any political action committee'"; and (3) his freedom of religion under the First Amendment.[4]

The trial court granted summary judgment to the defendants, concluding that Sizemore lacked standing, and, alternatively, to the extent that he had standing, that the constitutional claims lacked merit.[5] The court held that the trial court's original findings and the nature of the activity in which Sizemore's organizations had engaged justified the terms of the injunction. To the extent that the injunction was directed towards Sizemore's speech or expression, the court concluded that "a common law exception for fraudulent speech or expression would apply to permit this injunction as it is tailored not to silencing anyone, but only to limiting control relationships that the court concluded had been abused." The court also rejected Sizemore's First Amendment challenge, because "federal case law permits injunctions that address a significant governmental interest and are narrowly tailored to protect that interest," and, here,

---

[4] Paragraph 5 of the injunction provides:

"'5. OTU-EF successor organizations are hereby enjoined from making any contributions or providing anything of value, including loans or in-kind contributions, to any political action committee are so enjoined for a period of five years from the date the judgment is entered in this action. An 'OTU-EF successor organization' is defined as any educational foundation, or similar organization, that is eligible for I.R.C. § 501(c)(3) tax exempt status in which Bill Sizemore is a manager, officer, director, trustee, or controlling person of the successor organization or otherwise participates, directly or indirectly, in the direction or control of the activities of the OTU-EF successor organization.'"

*AFT I*, 208 Or App at 397. (Edmonds, J. dissenting.)

Paragraph 8 of the injunction provides:

"'8. OTU-PAC and OTU-EF and their OTU successors are hereby enjoined from doing business with I & R Petitions Services, Inc. ('I & R'), and any and all I & R successors and are so enjoined for a period of five years from the date the judgment is entered in this action. An 'I & R successor' is defined as any corporation, sole proprietorship, partnership or other business which is owned in whole or in part by any owner of I & R, and performs similar services as I & R.'"

*Id.* at 398 (Edmonds, J. dissenting).

[5] The court noted that Sizemore had withdrawn his due process claims and maintained only his assertions that the injunction violated his state or federal rights relating to speech, religion, or initiative.

"the governmental interest in protecting the initiative process from the type of corruption that the trial court found is adequate to justify this restriction on control relationships and not a restriction on the ability of Plaintiff or the entities covered by the injunction to communicate in the political process."

In November 2007, the trial court entered a judgment dismissing the action in *Sizemore v. AFT*. Sizemore did not appeal the judgment.

We now reach the facts giving rise to this appeal. Plaintiffs filed two subsequent contempt proceedings in the underlying action, Contempt 2 and Contempt 3, arguing that successor organizations of the original defendants had violated paragraph 7 of the injunction by virtue of their initiative campaign activities. The issue in Contempt 2 was whether OTU2-PAC and Sizemore had violated paragraph 7 by expending cash raised by OTU2-PAC for an initiative effort in Douglas County. The Contempt 3 proceeding addressed whether Sizemore and another successor organization that Sizemore had formed, Give Seniors a Break PAC, had violated paragraph 7 by expending cash raised by that successor organization.

The trial court held an evidentiary hearing on Contempt 2 in December 2005. At the hearing, defendants did not dispute that OTU2-PAC had engaged in initiative activities in which defendants had raised and spent roughly $25,000. However, defendants argued that the court needed to decide (1) whether the injunction prohibits Sizemore from engaging in initiative activity through a political committee other than defendant OTU2-PAC; and if so, (2) whether the injunction is unconstitutional as a prior restraint on constitutionally protected rights. Defendants argued that the court should apply a narrow construction of the injunction in order to avoid the constitutional violations that defendants raised in their affirmative defenses. Plaintiffs responded that, under *Polygon*, 194 Or App at 665, Sizemore could not challenge the constitutionality of the injunction as a defense to contempt, and, because the trial court had denied Sizemore's motion for relief in *AFT IV*, he was precluded from raising constitutional challenges to the injunction in this or future proceedings. According to plaintiffs, the only

proper issue before the court was whether defendants had violated the injunction.

The trial court ruled on Contempt 2 in May 2008, holding Sizemore and OTU2-PAC in contempt for violating the injunction. The court concluded that "paragraph 7 must be construed to prohibit transfers of assets if the transfer is not for another asset of substantially the same value if it were to be executed upon."[6] The court concluded that "OTU2-PAC violated the Court's judgment and was in contempt of court when it transferred assets for rent and other overhead expenses and personal services, such as signature gathering." The court also concluded that defendants are precluded from further litigating the constitutionality of paragraph 7 and its appropriate construction.

Contempt 3 addressed actions taken by Sizemore after our decision in *AFT I*. Defendants argued that, because our opinion had vacated paragraph 7 as to OTU-PAC, those actions were not subject to the injunction. Defendants argued further that they could not be held in contempt for willfully violating the injunction, because paragraph 7 was subject to two reasonable constructions, and their conduct did not violate the construction for which they advocated. Plaintiffs responded that defendants' narrow interpretation of paragraph 7 was unreasonable, and that defendants' constitutional challenges were barred by the doctrines of claim preclusion and law of the case.

In Contempt 3, the trial court held Sizemore and Give Seniors a Break PAC in contempt for violating the injunction; the court determined that Give Seniors a Break was a successor organization under paragraph 7 and that the injunction therefore applied to it. The court found that Sizemore's conduct was willful, because he knew it was more likely than not that "chief petitioner committees," such as Give Seniors a Break, were successor organizations within the meaning of the injunction, and he nonetheless chose

---

[6] Initially, the trial court had deferred ruling on Contempt 2 pending our decision in *AFT I* in order to avoid conflicting determinations on the proper construction of paragraph 7 and its constitutionality. However, as discussed above, because defendants did not raise them on appeal, we did not address those issues in that appeal.

to disregard the prohibition. Finally, the court held that the injunction proscribed OTU2-PAC's transfer of assets acquired after the injunction was entered. The trial court entered judgments against defendants on Contempt 2 and Contempt 3 on June 27, 2008.

As noted, on appeal from those contempt judgments, defendants raise four assignments of error. We first address defendants' argument that the trial court lacked jurisdiction to enter the challenged provisions of the injunction. In particular, defendants contend that the trial court improperly relied on ORS 166.725(1)(b) as a basis for the injunction against Sizemore personally, because that statute does not authorize restrictions on nondefendants. Plaintiffs respond that the trial court had subject matter jurisdiction to enter the injunction in the underlying case, because ORS 166.720(1) authorizes equitable relief in an ORICO case, and a court of equity has inherent power to enter an injunction.

On appeal from a contempt judgment, a contemnor may challenge the court's subject matter jurisdiction to enter the underlying judgment on which the adjudication of contempt is based. *Polygon*, 194 Or App at 665. However, defendants' argument relies solely on the dissenting opinion in *AFT*, which opined only that the trial court had exceeded its statutory authority under ORS 166.725(1)(b), not that it lacked jurisdiction. *See* 208 Or App at 401 (Edmonds, J., dissenting). Defendants offer no authority for the proposition that the trial court lacked subject matter jurisdiction to enter the underlying judgment, and we discern none.[7] *See Polygon*, 194 Or App at 667 ("[T]he claimed lack of statutory authority that defendants identify as a jurisdictional defect does not bear on the court's subject matter jurisdiction to enter the * * * order.").

We decline to address defendants' statutory authority argument, because a contemnor cannot collaterally attack an injunction on that ground for the first time on appeal from a judgment of contempt. *Id.* ("[W]hatever the

---

[7] To the contrary, when we upheld the injunction as applied to Sizemore in *AFT III*, we noted that, "[i]n issuing the injunction, the court in this case acted under its authority in ORS 166.725(1) to issue 'appropriate orders and judgments' in an ORICO case." *AFT III*, 227 Or App at 47.

merits of the statutory argument that defendants make, it is not a jurisdiction argument that can be raised in this proceeding."). As the Supreme Court explained:

> "'[i]f a court has jurisdiction over the parties and the subject matter, and its order or decree is not complied with, that court may hold the noncomplying party in contempt even if it later appears that the original order or decree was either erroneous or in excess of the court's authority. The integrity of the judicial process demands compliance with court orders until such time as they are altered by orderly appellate review. Litigants are not entitled to sit in judgment on their own cases, and they must follow the appropriate channels for review of decisions they believe to be invalid. Unless and until an invalid order is set aside, it must be obeyed. Only when there has been no other opportunity to raise the issue can the validity of the underlying order be litigated in a subsequent contempt proceeding.'"

*State v. Ryan*, 350 Or 670, 681, 261 P3d 1189 (2011) (quoting *State ex rel Mix v. Newland*, 277 Or 191, 200, 560 P2d 255 (1977)). Defendants did not raise their statutory authority argument on appeal of the underlying proceeding in which the injunction was entered, *see* 253 Or App at 292-93, and cannot do so collaterally now.

We now turn to defendants' constitutional challenges. The trial court held that defendants are precluded from challenging the validity of the injunction on constitutional grounds in these contempt proceedings because they had an opportunity to do so in earlier proceedings and, in fact, raised similar arguments that were rejected in several of those proceedings. Defendants assert that they are not precluded from raising an as applied constitutional challenge to the trial court's interpretation of paragraph 7 in this proceeding, because the issue of whether that interpretation is unconstitutional was neither litigated nor necessary to the adjudication of earlier proceedings. Plaintiffs rejoin that the doctrines of claim preclusion, issue preclusion, and law of the case bar defendants from raising issues that they previously litigated or could have litigated in prior proceedings.

We review the trial court's conclusions with respect to preclusion for errors of law. *Reid v. Johnson*, 161 Or App 92,

94, 983 P2d 1061, *rev den*, 329 Or 527 (1999). The doctrines of claim preclusion, issue preclusion, and law of the case have the shared purposes of preventing harassment by successive proceedings, preventing inconsistent adjudications, and promoting economy of resources in the adjudicative process. *See D'Amico v. Ellinwood*, 209 Or App 713, 717-18, 149 P3d 277 (2006), *rev den*, 342 Or 473 (2007) (addressing purposes of issue preclusion and claim preclusion); *State v. Metz*, 162 Or App 448, 454, 986 P2d 714 (1999), *rev den*, 330 Or 331 (2000) (addressing foundation of law of the case doctrine). Those doctrines bind the parties to an action and those in privity with them. *Bloomfield v. Weakland*, 339 Or 504, 511, 123 P3d 275 (2005).

In *Sizemore v. AFT*, Sizemore asserted that the injunction violated his rights to due process under the Fourteenth Amendment and freedom of speech under the Oregon and United States constitutions. The trial court concluded that those claims lacked merit and dismissed the case on summary judgment. Sizemore did not appeal. Under the doctrine of claim preclusion, no party to that action (or a person or entity in privity with a party) may subsequently litigate a claim that is encompassed within that adjudication. *Drews v. EBI Companies*, 310 Or 134, 140-41, 795 P2d 531 (1990). "Claim" includes "all rights or remedies between the parties with respect to all or any part of a transaction, or series of connected transactions, out of which the action arose." *Id.* at 147. Claim preclusion does not require that "an issue of law or fact be actually litigated nor that the determination of an issue be essential to the final or end result of the proceeding." *Evangelical Lutheran Good Samaritan SSC v. Bonham*, 176 Or App 490, 494-95, 32 P3d 899 (2001), *rev den*, 334 Or 75 (2002).

Defendants argue that claim preclusion does not apply with respect to the *Sizemore v. AFT* judgment for two reasons: first, paragraph 7 was vacated by the time that *Sizemore v. AFT* was before the trial court, which left Sizemore no opportunity to litigate its constitutionality; and second, the trial court's conclusion that Sizemore lacked standing to litigate prevented him from raising his substantive claims in *Sizemore v. AFT*.

We reject defendants' argument that paragraph 7 was no longer in effect when the judgment was entered in *Sizemore v. AFT* in November 2007. Our decision in *AFT I*—the appeal from the underlying judgment—did not take effect until the appellate judgment following Supreme Court affirmance of our decision was issued in November 2008. ORAP 14.05(2). In the meantime, even though that judgment was being appealed, the trial court retained jurisdiction to "enforc[e] the judgment, subject to any stay of the judgment." ORS 19.270(1)(b). Here, defendants did not request a stay of the injunction, and it remained in full force and effect against OTU-PAC when *Sizemore v. AFT* was before the trial court. Moreover, the issues that Sizemore raised in *AFT IV* before he initiated the action in *Sizemore v. AFT*, demonstrate his recognition that paragraph 7 could be construed to prohibit all spending by successor organizations, including expenditures of assets acquired after the injunction was entered. Thus, defendants' incentive to litigate that issue already was present.

We also reject defendants' argument that Sizemore had no opportunity to litigate the constitutionality of the injunction in *Sizemore v. AFT*. Despite its conclusion that Sizemore lacked standing, the trial court fully considered the issue and, as an alternative basis for its decision, determined that "the facts, viewed in the light most favorable to plaintiff, fail[ed] to establish that plaintiff's rights have been violated or that the injunction that is the subject of this action is in any manner constitutionally defective." In short, defendants had a full opportunity in *Sizemore v. AFT* to litigate whether the injunction was unconstitutional as applied to Sizemore and his successor organizations. Accordingly, based on the judgment in *Sizemore v. AFT*, the doctrine of claim preclusion barred Sizemore and his privies, including OTU2-PAC and Give Seniors a Break PAC, from challenging the constitutionality of the injunction in these contempt proceedings.

We also conclude that defendants' constitutional challenges in these proceedings are barred by the trial court's decision in *AFT IV* and our decision in *AFT III*. The parties debate the preclusive effect of those decisions

in terms of both issue preclusion and the law of the case doctrine. Issue preclusion applies "when the parties to a prior action subsequently, in a different action, again litigate issues actually litigated and determined in the prior action." *D'Amico*, 209 Or at 718 (internal quotation marks and citations omitted). In contrast, the law of the case doctrine "precludes relitigation or reconsideration of a point of law decided at an earlier stage of the *same case.*" *Bloomfield v. Weakland*, 224 Or App 433, 440, 199 P3d 318 (2008), *rev den*, 346 Or 115 (2009). (Emphasis added.)

Both *AFT III* and *AFT IV*, as well as these contempt proceedings (Contempt 2 and Contempt 3), were adjudicated in the same action as the underlying judgment that contained the injunction. And, importantly, *AFT III* and *AFT IV* were decided by the trial court before the decisions in Contempt 2 and Contempt 3. Therefore, we conclude that the law of the case doctrine applies.[8] Under that doctrine, if an earlier ruling was necessary to the adjudication of an issue before the court, it "'is binding and conclusive upon both the inferior court in any further steps or proceedings in the same litigation and upon the appellate court itself in any subsequent appeal or other proceeding for review.'" *Hayes Oyster Co. v. Dulcich*, 199 Or App 43, 53, 110 P3d 615, *rev den*, 339 Or 544 (2005) (quoting *State v. Pratt*, 316 Or 561, 569, 853 P2d 827, *cert den*, 510 US 969 (1993)); *see Poet v. Thompson*, 208 Or App 442, 450, 144 P3d 1067 (explaining that law of the case doctrine applies to prior trial court rulings within the same case).

Sizemore's motion for relief in *AFT IV* was framed broadly; it asked the trial court to consider whether paragraph 7 would be unconstitutional if it substantially restricted

---

[8] Defendants argue that the law of the case should not be used as an alternative basis for affirmance, because the trial court did not rely on it in this case. We disagree. A reviewing court has discretion to affirm the ruling of a lower court on an alternative basis when the facts in the record are sufficient to support the alternative basis, the trial court's ruling was consistent with the view of the evidence under the alternative basis, and the record is materially the same as it would have been developed had the prevailing party raised the alternative basis for affirmance below. *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001). Plaintiffs raised the law of the case doctrine in both the Contempt 2 and Contempt 3 proceedings. Defendants had an opportunity to respond, and the record was sufficient for the trial court to conclude that law of the case precluded defendants' constitutional claims.

Sizemore's political activities.[9] The court's order denying Sizemore's motion for relief implicitly concluded that a broader construction of paragraph 7 posed no constitutional infirmity, and it resulted in an adjudication that determined that the injunction did not violate Sizemore's constitutional rights in the manner that he asserts in the present appeal.

In *AFT III*, the trial court held that the injunction could apply to Sizemore, rejecting defendants' affirmative defense that, "[t]*o the extent the court's orders limit or impede* the ability of Bill Sizemore in his individual capacity as a citizen from engaging in political activity [they] infringe[] his right to free speech." (Emphasis added.) We affirmed, noting that an important purpose of the injunction was to prevent Sizemore from continuing his racketeering activities, and not merely to protect plaintiffs' interests in the assets of OTU-PAC and OTU-EF to satisfy the money judgment. *AFT III*, 227 Or App at 51. Thus, *AFT III* established that restrictions on Sizemore's political activities resulting from the application of paragraph 7 would not violate his constitutional rights.

Here, defendants again argue that the injunction as applied to Sizemore is unconstitutional, this time characterizing the violation as an unlawful prior restraint. The decisions in *AFT III* and *AFT IV* each preclude defendants' challenges in the ways that we have described. We therefore conclude that the trial court did not err in determining that defendants are barred from challenging the constitutionality of the injunction, including the constitutionality of paragraph 7 as applied to Sizemore and successor organizations.

The only issue remaining for decision is whether the trial court erred in concluding that defendants' violations of the injunction were willful. We review a contempt judgment for any evidence to support the trial court's findings and, if such evidence exists, we determine whether the court's findings support the conclusion that a party is in contempt:

---

[9] The trial court's Opinion Deferring Ruling on Contempt stated that, in the motion for relief and in the Contempt 2 proceeding, "defendants contended that such a broad reading, while possible, should not be adopted because it would result in the injunction being unconstitutional *in its reach*." (Emphasis added.)

"[A] contempt proceeding is legal in nature. * * * Because it is, we review the trial court's findings under the same standard that applies to our review of jury verdicts, which is a review for any evidence to support the findings. * * * To the extent that some of our prior contempt cases stated a different standard of review, they are disavowed."

*Polygon*, 194 Or App at 670; *see also Keller and Holdner*, 232 Or App 341, 344, 222 P3d 1111 (2009) ("On appeal * * * we do not reweigh the evidence to determine anew whether there is clear and convincing evidence of contempt.").

The trial court found that Sizemore knew what the court meant by the terms of the injunction, that this court's opinion in *AFT I* did not negate the willfulness of Sizemore's actions, and that Sizemore could have sought a stay of paragraph 7 pending review of that decision by the Supreme Court. On appeal, defendants argue that paragraph 7 is ambiguous, and the record contains no evidence that Sizemore acted with an improper intent. Defendants contend that Sizemore reasonably believed that his conduct did not violate the injunction, because his view was consistent with this court's vacation of paragraph 7 and the trial court's acknowledgement that paragraph 7 was ambiguous.[10] Plaintiffs respond that the record contains evidence that defendants' violations were willful when he continued to raise and spend money on initiatives before and after filing his motion for clarification of the injunction.

To hold a person in contempt, the court must find that the person willfully disobeyed a court order or judgment. ORS 33.015(2)(b). Knowledge and understanding of the law are presumed. *See Dungey v. Fairview Farms*, 205 Or 615, 626, 290 P2d 181 (1955). Under ORS 33.015(2), a finding of "willfulness" "requires a finding of voluntary noncompliance with a court order." *State v. Montgomery*, 216 Or App 221, 224, 172 P3d 279 (2007) (internal quotation marks omitted). Although the Supreme Court has not gone so far as to hold that mere accidental conduct suffices to establish

---

[10] The trial court stated in its Order Deferring Ruling on Contempt that the language of paragraph 7 is ambiguous, and, but for the procedural posture of the case, the court "would be inclined to construe the prohibitions of paragraph [7] narrowly for all the reasons cited by defendants." However, the trial court ultimately ruled in favor of a broad construction of paragraph 7.

willfulness under ORS 33.015(2), it has recognized that the contempt statute defines "willfulness" without reference to a contemnor's intent. *Id.* at 224-25 (citing *In re Chase*, 339 Or 452, 455, 457, 121 P3d 1160 (2005)). A party with actual knowledge of the issuance of an injunction is bound by its terms and can be held in contempt for its violation. *Polygon*, 194 Or App at 668.

In *AFT III*, the trial court held, and we affirmed, that the injunction was not ambiguous, because there was sufficient evidence to conclude that

> "Sizemore knew what he was doing and did not act inadvertently. That is sufficient for it to conclude that his actions were willful, a determination that does not require a finding of malice on Sizemore's part. *See Young v. State of Oregon*, 340 Or 401, 409, 133 P3d 915 (2006) (holding that the word 'willful' under ORS 652.150 merely indicates that the act or omission was purposeful and not the product of inadvertence); *Sabin v. Willamette-Western Corp.*, 276 Or 1083, 1093, 557 P2d 1344 (1976) (same, relying on a case that described the definition as applying to civil cases generally)."

*AFT III*, 227 Or App at 53. Here, too, the record contains sufficient evidence for a reasonable trier of fact to find that defendants acted willfully in the respects asserted in Contempt 2 and Contempt 3.

OTU2-PAC and Give Seniors a Break PAC are both successor organizations as defined in the injunction. Sizemore was a director of both when they were formed. Sizemore organized OTU2-PAC a few weeks after the jury's verdict in the underlying case. During the summer and fall of 2004, OTU2-PAC engaged in initiative activities to place measures on the ballot. It raised $25,580. Some of the funds were used to pay Sizemore a salary and benefits. During the summer and fall of 2004, the committee successfully placed a measure on the 2004 ballot in Douglas County that would prohibit the use of public resources to help collect political funds.

Sizemore believed that he could spend OTU2-PAC funds to pay bills. He believed that his First Amendment rights would be violated if he could not raise money and

put measures on the ballot. In response to a letter from a compliance specialist at the Secretary of State's office reminding him of the injunction, Sizemore told her that he intended to continue raising money.

Because the foregoing evidence supported the trial court's findings that defendants willfully violated the terms of the injunction, the trial court did not err in entering the challenged contempt judgments.

Affirmed.