190 July 30, 2025 No. 668

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Arnold John LOPEZ,
*Plaintiff-Respondent,*

*v.*

OREGON STATE HOSPITAL,
*Defendant-Appellant.*

Washington County Circuit Court
24CN02897, 24CN02898; A185113

Rebecca D. Guptill, Judge.

Argued and submitted June 4, 2025.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for appellant. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Laura Graser argued the cause and filed the brief for respondent.

Before Ortega, Presiding Judge, Hellman, Judge, and Armstrong, Senior Judge.

ORTEGA, P. J.

Reversed.

## ORTEGA, P. J.

Oregon State Hospital (OSH)[1] appeals from a contempt judgment for failing to admit plaintiff, a criminal defendant, into OSH within seven days of his commitment under ORS 161.370, which provides for restorative commitments for defendants who lack fitness to proceed. We conclude that OSH established, as a matter of law, the affirmative defense of inability to comply with the commitment order, ORS 33.055(10), and that the trial court erred in entering a judgment of contempt. Accordingly, we reverse.

## I.  BACKGROUND

### A.  *The Federal Injunction and Remedial Order*

OSH has been operating under a federal permanent injunction since 2003 (the federal injunction) that applies to all criminal defendants who are found by Oregon courts, under ORS 161.370, to be unfit to proceed to trial due to an inability to aid and assist in their own defense. *Oregon Advocacy Ctr. v. Mink*, 322 F3d 1101 (9th Cir 2003) (affirming the district court's 2002 permanent injunction that was stayed pending appeal). Under the federal injunction, OSH is required to admit those criminal defendants no later than seven days after the trial court issues an order determining that the criminal defendant is unfit to proceed to trial. *Id.* at 1123. OSH achieved and then maintained compliance with that order until 2018, and in 2019 the plaintiffs in that matter brought contempt proceedings. *See Disability Rights Oregon v. Hathi*, 3:02-cv-00339-AN, 2025 WL 1604093, at *3 (D Or June 6, 2025) (setting out case history). After joining an action brought by individuals found guilty except insane (GEI), the federal district court entered an order to address OSH's noncompliance using remedial measures (the federal remedial order). *Id.* at *3-4; *see also Disability Rights Oregon v. Allen*, 3:02-cv-00339-MO, 2022 WL 4009060 (D Or Sept 1, 2022). As relevant here, the remedial order provides:

---

[1] We note that the contempt judgment purports to hold both Oregon State Hospital and the Oregon Health Authority in contempt. However, only Oregon State Hospital is named as a defendant in the contempt proceeding and only Oregon State Hospital is named as a judgment debtor for purposes of the imposed sanction. In addition, only Oregon State Hospital has made an appearance on appeal.

"[OSH] shall not admit patients except as provided for by the recommendations in the Neutral Expert's January and June 2022 reports or as otherwise provided by this Court. Namely, Aid and Assist ('A&A') and Guilty Except Insane ('GEI') persons shall be admitted according to their place on the admissions wait list or pursuant to the expedited admissions policy."

*Id.* at 1. That order has been extended by the federal district court, most recently in June 2025.[2] *Disability Rights Oregon v. Hathi*, 2025 WL 1604093, at *11.

B.   *Facts in This Case*

The trial court found plaintiff, a criminal defendant, to be unfit to proceed, under ORS 161.370, and, on June 20, 2024, committed him to the custody of OSH for a period of restoration. That order provided that "OSH shall admit defendant within 7 days of the commitment order." Eight days later, on June 28, the court entered a second order that provided: "Oregon State Hospital to immediately accept transport of and admit defendant pursuant to court's attached previous order or face potential contempt." On July 3, while still in county jail, plaintiff filed a motion for an order to show cause why OSH should not be held in contempt, and for remedial sanctions under ORS 33.105. On July 8, the trial court issued an order to show cause and set a hearing date of July 11.

On July 8, OSH notified the county sheriff that a bed was available for plaintiff on July 9. However, the sheriff could not transport plaintiff until July 10. On that day, the sheriff transported plaintiff to OSH, he was admitted, and OSH filed a motion to dismiss plaintiff's contempt proceeding based on that admission. OSH also argued in its motion that its prior noncompliance was not willful and was based on an inability to comply due to a record number of recent commitments that overwhelmed OSH's capacity.

---

[2] In the June 2025 order, after a two-day factual hearing on the systemic issues the federal litigation has been addressing on a class-wide basis, the federal district court also held OSH and the Oregon Health Authority in contempt for its failure to take all reasonable steps to comply with the federal injunction and issued an order that extended the remedial order, ordered additional remedial measures, and fined OSH and the Oregon Health Authority $500 per class member per day "unless and until [they] achieve substantial compliance with the seven-day standard." *Disability Rights Oregon v. Hathi*, 2025 WL 1604093, at *10-11.

OSH maintained that its actions were in compliance with the federal remedial order.

To support its position, OSH submitted the remedial order, including the process for expedited admissions, and the declaration of Brandy Eurto, the Admissions Director for OSH. Eurto attested that in May 2024, 122 aid and assist defendants were committed to OSH—"the highest number ever committed in one month"—which led to a delay in admissions "because we did not have the capacity to admit all aid and assist patients committed to OSH custody." Eurto further attested that "OSH has been operating at maximum capacity such that OSH has only been able to admit a patient upon another patient's discharge." She also attested that June 9 was the earliest date plaintiff could be admitted under the federal remedial order, that plaintiff did not seek an expedited admission, and that the sheriff informed OSH that he could not be transported on July 9, so he was admitted on July 10, when the sheriff was able to transport him to OSH.

At the contempt hearing on July 11, the court concluded that it could impose remedial sanctions against OSH even after the ongoing contempt concluded and denied OSH's motion to dismiss. Plaintiff rested his case based on his pleading and the evidence submitted in the declarations by OSH. OSH moved for dismissal under ORCP 54 B for insufficient evidence of willfulness or damages and based on OSH's inability to comply. The court denied that motion and then ruled on the contempt, concluding that OSH willfully disobeyed the court's order, and that plaintiff was injured as a result because he suffered a substantive due process violation. The court's order was also based on its finding that OSH is part of the state and that the state "has within its control the ability to remedy bed space and has not done so." The court held OSH in contempt and fined it $100 per day for every day plaintiff remained in jail after the seven days to admit him to OSH expired, stating that the amount "is sufficient to compensate [plaintiff] for the loss or injury suffered as a result of contempt of court." That resulted in a $1,300 judgment against OSH for plaintiff for the 13 days plaintiff was held in jail after the seven days expired.

OSH now appeals and assigns error both to the court's denial of its motion to dismiss and to its finding of contempt and award of monetary sanctions.

## II.   ANALYSIS

A.   *Pretrial Motion to Dismiss*

On appeal, in its first assignment of error, OSH asserts that the trial court erred in denying its pretrial motion to dismiss because it could not be held in remedial contempt after it complied with the court's order. Citing ORS 33.045(3)(b),[3] OSH argues that there was no lawful basis to impose a remedial fine on OSH because it was not engaging in a continuing contempt.

We reject OSH's argument because it is unpreserved. OSH moved to dismiss based on its contention that plaintiff had only sought sanctions for continuing contempt. At the hearing, OSH clarified, "I do think that the Court has the authority to impose sanctions, including damages for past contempt. It's our position that the requested sanctions did not include a request for past contempt, but only damages of a maximum of $500 for each day of continuing contempt." The trial court concluded that plaintiff had adequately pled damages for the past contempt and denied OSH's motion. Thus, OSH did not assert the argument it now makes.[4]

B.   *Contempt*

We next address OSH's arguments that the trial court erred in entering the contempt judgment. "We review a contempt judgment for any evidence to support the trial court's findings and, if such evidence exists, we determine

_____

[3] ORS 33.045(3)(b) provides, "A fine is *** [r]emedial if it is for continuing contempt and the fine accumulates until the defendant complies with the court's judgment or order or if the fine may be partially or entirely forgiven when the defendant complies with the court's judgment or order."

[4] We further note that, even if OSH had preserved its argument, OSH fails to address the import of ORS 33.045(4), which provides that "[a]ny sanction requiring payment of amounts to one of the parties to a proceeding is remedial," or ORS 33.105(1)(a), which authorizes a court to impose as a remedial sanction "[p]ayment of a sum of money sufficient to compensate a party for loss, injury or costs suffered by the party as the result of a contempt of court." The sanction imposed by the court here was for payment of amounts to plaintiff to compensate him for an injury.

whether the court's findings support the conclusion that a party is in contempt[.]" *OEA v. Oregon Taxpayers United*, 253 Or App 288, 303, 291 P3d 202 (2012).

### 1. *Applicable law*

Contempt of court is willful "[d]isobedience of, resistance to or obstruction of the court's authority, process, orders or judgments." ORS 33.015(2)(b). A party aggrieved by an alleged contempt may initiate proceedings for remedial sanctions. ORS 33.055(2)(a). The party bringing the remedial contempt proceeding must prove by clear and convincing evidence, ORS 33.055(11), "(1) that a valid court order exists, (2) the alleged contemnor's knowledge of the order, and (3) the alleged contemnor's willful noncompliance with that order." *State v. Zamora-Skaar*, 308 Or App 337, 351, 480 P3d 1034 (2020). To prove willful noncompliance, the disputed element here, "the party initiating the contempt proceedings need show only that the noncompliance was intentional 'and with [the] knowledge that the act or omission was forbidden conduct.'" *Id*. (quoting *State v. Welch*, 295 Or App 410, 417, 434 P3d 488 (2018)); *see also OEA*, 253 Or App at 304 (willfulness under the contempt statute is "voluntary noncompliance with a court order" (internal quotation marks omitted)). A showing of willfulness does not require a showing of ability to comply with the court order, because the statute expressly provides that inability to comply is an affirmative defense. ORS 33.055(10); *see State ex rel Mikkelsen v. Hill*, 315 Or 452, 458, 847 P2d 402 (1993) (so holding with respect to punitive contempt).

However, an alleged contemnor may prove inability to comply with the court order by a preponderance of the evidence as an affirmative defense. ORS 33.055(10) (inability to comply is an affirmative defense in a remedial contempt proceeding); ORS 10.095(5) ("[I]n civil cases the affirmative of the issue shall be proved, and when the evidence is contradictory, the finding shall be according to the preponderance of evidence[.]"); *see also Mikkelsen*, 315 Or at 459 n 6 (stating that the burden for the affirmative defense of inability to comply is by a preponderance of the evidence in a punitive contempt proceeding).

    2.   *Willfulness*

        OSH first argues that plaintiff failed to establish a
*prima facie* case of remedial contempt on the element of will-
fulness because the undisputed evidence before the court
was that OSH did not choose to not comply with the court's
order. That is, OSH argues that its noncompliance was not
voluntary because it was already at full capacity and the
federal remedial order strictly governed the order in which
OSH could admit new patients as beds became available.

        We reject OSH's argument because it conflates
the willfulness element for a *prima facie* case of contempt
with the affirmative defense of "inability to comply," ORS
33.055(10). As explained above, a plaintiff is not required
to prove an ability to comply with the order to show willful-
ness. Rather, the legislature has expressly provided that an
inability to comply is an affirmative defense. Voluntariness
for purposes of contempt is not the same as an ability to com-
ply; it is a knowing volitional act or failure to act, in that,
the noncompliance was not accidental. *Mikkelsen*, 315 Or at
459 (addressing punitive contempt, stating that willfulness
"may be established by proof that a party had knowledge
of a valid court order and failed to comply with the order");
*see also State v. Montgomery*, 216 Or App 221, 223, 225, 172
P3d 279 (2007) (holding that whether conduct was acci-
dental was relevant to willfulness in a contempt proceed-
ing—there, the defendant testified that she had dialed her
ex-husband's phone number by mistake, in violation of the
terms of a restraining order).

        OSH does not assert that its failure to admit plain-
tiff within seven days was not a knowing failure to com-
ply with the order but, rather, that its failure was governed
by circumstances beyond its control. As we understand
Supreme Court case law, that is an issue of inability to com-
ply and not one of willfulness, particularly given that OSH
was in the best position to know about the facts relating to
its inability to comply. *See Mikkelsen*, 315 Or at 459 (The
legislature's choice to make inability to comply an affirma-
tive defense "makes sense, because the contemnor is in the
best position to know whether ability to pay is even a con-
sideration in the proceeding and also has the best access

to evidence on the issue[.]" (Internal quotation marks omitted.)). We thus proceed to address OSH's arguments under the affirmative defense.

### 3. *Inability to comply*

OSH also argues that it established the affirmative defense of inability to comply based on the undisputed facts in the record. As stated above, "[w]e review a contempt judgment for any evidence to support the trial court's findings and, if such evidence exists, we determine whether the court's findings support the conclusion that a party is in contempt[.]" *OEA*, 253 Or App at 303. With respect to whether OSH established its affirmative defense, "[w]e review to determine whether the uncontradicted evidence in the record entitled [OSH] to prevail as a matter of law." *See, e.g.*, *Ortega v. Martin*, 293 Or App 180, 194, 427 P3d 1103 (2018), *vacated on other grounds*, 366 Or 760, 468 P3d 945 (2020).

Here, the facts provided by OSH in Eurto's declaration were undisputed. OSH established that it was operating at full capacity and could only admit a patient if another patient was discharged, that a large number of commit orders in May caused delays in new admissions, and that plaintiff was admitted as soon as was possible under the terms of the federal remedial order. OSH also established that it was required to comply with the federal remedial order, which in clear terms prohibited OSH from admitting patients except as provided in the Neutral Expert's reports or by the federal court. The applicable provision here was that aid and assist and GEI persons "shall be admitted according to their place on the admissions wait list or pursuant to the expedited admissions policy attached to this order." OSH also established that no one had sought expedited admission for plaintiff. No reasonable factfinder could find based on that uncontroverted evidence that OSH had the ability to admit plaintiff sooner.

In so concluding, we reject plaintiff's argument that OSH's compliance with the federal injunction and federal remedial order instead of the order in this case is merely a policy choice and does not establish a "factual impossibility."

Here, OSH did establish the affirmative defense because it was a "factual impossibility" for it to comply with both the federal remedial order, which required it to adhere to the wait list order for admitting aid and assist defendants, and the order in this case, which required it to admit plaintiff in seven days.[5]

The only finding of the trial court in the contempt judgment that pertained to OSH's affirmative defense was its finding that OSH had the ability to comply with the order because OSH is part of the state and the state "has within its control the ability to remedy bed space and has not done so." That finding is not based on any evidence in the record. Neither party submitted evidence that showed that OSH had any ability to "remedy the bed space" such that it could have complied with the court's order to admit plaintiff within seven days and failed to do so. While we generally agree with the concept that an inability to comply defense cannot be established based on circumstances created in bad faith by the contemnor's own conduct, the record must include evidence on which to make such a finding. This record contains none.

We also briefly address and reject plaintiff's suggestion that OSH was, or should be, required to take action to notify the court or aid and assist defendants of its inability to comply with a commitment order before seven days pass, or to contest the order itself in the trial court before a contempt proceeding is initiated. We do not have a basis in this case on which to impose such a requirement. The commitment order here did not place any obligations on OSH to provide such notice or to take any action prior to its admission of plaintiff. OSH was not a party to the underlying criminal proceeding and thus is limited in what it can do with respect to the order. Also, there is nothing in the remedial contempt statutes that required OSH to provide such notice before asserting the affirmative defense. *Compare* ORS 33.055(10) (The remedial contempt statute provides:

---

[5] We note that OSH has not offered us a test for "inability to comply" that is different from "factual impossibility," having framed its arguments using the word impossibility. As such, we do not decide in this case whether the appropriate test for the affirmative defense is factual impossibility. *See Zamora-Skaar*, 308 Or App at 359 n 11 (noting that OSH did the same in that case).

"Inability to comply with an order of the court is an affirmative defense.") *with* ORS 33.065(7) (The punitive contempt statute provides: "Inability to comply with an order of the court is an affirmative defense. If the defendant proposes to rely in any way on evidence of inability to comply with an order of the court, the defendant shall, not less than five days before the trial of the cause, file and serve upon the city attorney, district attorney or Attorney General prosecuting the contempt a written notice of intent to offer that evidence."). While we agree with plaintiff that other options could better serve aid and assist defendants than OSH's apparent current practice of silence with the court, this case does not provide us with an opportunity to explore them.

In sum, we conclude that OSH established on this record, as a matter of law, the affirmative defense of inability to comply, under ORS 33.055(10). As a result, we do not address its arguments regarding plaintiff's damages.

Reversed.