Argued and submitted December 20, 2001, reversed and remanded for entry of
judgment in favor of plaintiff March 13, 2002

## Robert L. HILDEBRANDT,
*Appellant,*

*v.*

## Harvey G. ANDERSON
## and Nancy A. Anderson,
*Respondents.*

## 9907-07507; A111939

42 P3d 355

Garry P. McMurry argued the cause and filed the brief for appellant.

No appearance for respondents Harvey G. Anderson and Nancy A. Anderson.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

SCHUMAN, J.

### SCHUMAN, J.

Plaintiff, a real estate broker, found a lessee for property owned by defendants and took his agreed-upon commission in the form of a promissory note from them. When the lessee stopped making lease payments to defendants, defendants stopped making commission payments to plaintiff, who then brought this action to collect. The trial court found in favor of defendants on the ground that plaintiff was not entitled to his commission after the lessee stopped paying. Plaintiff appeals. Because this was an action at law tried to the court, we cannot reject findings of fact if there is any evidence in the record to support them. *Illingworth v. Bushong*, 297 Or 675, 694, 688 P2d 379 (1984). We reverse.

The following facts are not in dispute. In October 1996, plaintiff and defendants entered into an exclusive listing agreement authorizing plaintiff to find a tenant for defendants' used car lot. The agreement provided that, if plaintiff found a lessee "ready and willing to enter into a deal" at the specified terms, defendants would pay plaintiff "in cash for your services in connection with this contract, a commission equal in amount to five percent up to first three years of lease." Shortly thereafter, plaintiff, defendants, and Paramount Automotive, Inc. (Paramount or lessee) all signed an earnest money agreement by which defendants agreed to lease the premises to Paramount for three years at $7,500 per month, with four months' rent paid in advance. The earnest money agreement included a statement that, "for services rendered, [defendants] further agree * * * to pay forthwith to [plaintiff] a commission of five percent first three years ($13,500 per note)."

On December 12, defendants and Paramount followed through on the earnest money agreement and signed a three-year lease at $7,500 per month. At the time of the lease signing, defendants executed two additional documents: a promissory note to plaintiff and a partial assignment of rents. The note stated that defendants would pay plaintiff $13,500, plus interest, in consecutive monthly installments of $485, beginning in March of the following year, until the total sum was paid. The form note also contained an acceleration

clause, which provided that, if any installment was not paid, the outstanding balance and interest became immediately due. The partial assignment of rents, signed by plaintiff, defendants, and Paramount, contained explicit recitals stating that defendants "ha[d] executed a promissory note in favor of [plaintiff] in the amount of $13,500 as and for broker's fee due and owing" and that the parties "have agreed that the broker's fee may be paid in monthly installments during the term of the lease." The agreement then assigned to plaintiff defendants' interest in "a portion of the monthly rent, in the amount of $485 per month" and instructed Paramount to pay that portion directly to plaintiff.

None of the documents contained any indication that defendants' obligation to make payments ended if defendants did not receive rent from Paramount. Both plaintiff and defendant Harvey Anderson testified that, although they never discussed that issue, they did have numerous discussions before execution of the lease in which plaintiff assured defendants that Paramount could perform under the lease. Nevertheless, less than one year into the lease, Paramount stopped making monthly rent payments to either defendants or plaintiff. Plaintiff then initiated this action seeking to enforce the note against defendants. After a bench trial, the court issued a brief letter opinion concluding that "plaintiff is not entitled to any broker commission" because "[d]efendants rebutted the rebuttable presumption that there was consideration for execution of the installment note." The court also stated in a footnote, "Further, there was no meeting of the minds between the parties. Nor was there any effective acceptance of the offer by the lessee in the first place." Judgment was entered accordingly, and plaintiff appeals.

Plaintiff first assigns error to the trial court's conclusion that the installment note imposed no obligation on defendants because it was not supported by consideration. Plaintiff argues as follows. The promissory note is a negotiable instrument as defined by ORS 73.0104(1). Therefore, Article 3 of the UCC, ORS chapter 73, rather than the common law of contracts, applies to the question of consideration. *Schiffer v. United Grocers, Inc.*, 329 Or 86, 91, 989 P2d 10 (1999). Under the UCC, "[i]f an instrument is issued for value * * * the instrument is also issued for consideration." ORS

73.0303(2). An instrument is issued for value if it "is issued or transferred as payment of, or as security for, an antecedent claim against any person." ORS 73.0303(1)(c). The promissory note issued by defendants was issued as payment of an antecedent claim, *i.e.*, plaintiff's claim to his $13,500 in commissions pursuant to the listing agreement and earnest money agreement. Therefore the note was issued for value; therefore it was issued for consideration.[1]

The official commentary to the parallel section of the UCC, section 3-303, provides a useful and analogous illustration:

> "X owes Y $1000. * * * X issues a note to Y for the debt. Under subsection (a)(3) X's note is issued for value. Under subsection (b) the note is also issued for consideration whether or not, under contract law, Y is deemed to have given consideration for the note."

Defendants attack two steps in plaintiff's reasoning. First, they maintain that their obligation to make payments on the note was conditioned on their continued receipt of rent from Paramount, and that, under ORS 73.0104(1), a negotiable instrument must be "unconditional." However, as we discuss more fully below, no condition appears on the face of the note, and nothing in the record supports the conclusion that the note was conditional. Therefore, the promissory note was a "negotiable instrument" under ORS 73.0104.

Second, defendants contend that, even if the note is a negotiable instrument, no consideration supports it because the claim underlying the note—that is, plaintiff's claim for his commission—is invalid; therefore the instrument was not issued for value because it was not issued for a valid antecedent claim, ORS 73.0303(1)(c), and thus was not issued for consideration, ORS 73.0303(2). Defendants rely on *Setser v. Commonwealth, Inc.*, 256 Or 11, 470 P2d 142 (1970), for the proposition that, when a real estate broker arranges a transaction between a lessor and lessee and agrees to be paid from the lessor's proceeds from the property transaction, a default

---

[1] Plaintiff does not claim to be a holder in due course who is immune from a "failure of consideration" defense under ORS 73.0305(2) (right of holder in due course to enforce negotiable note not subject to certain defenses).

or other subsequent failure to perform by the lessee cancels the lessor's obligation to pay the balance due on the commission. Plaintiff cites *Setser* as well, arguing that it stands for the proposition that a broker's commission is due in full when the deal he or she arranged closes. We agree with plaintiff. Under *Setser* and subsequent cases, the commission was due in full at the time the lease documents were executed.

■ *Dictum* in *Setser* suggests that a real estate commission may not be earned on a *sales* transaction until "the purchaser completes the transaction by closing the title in accordance with the provisions of the contract." 256 Or at 21 (quoting *Ellsworth Dobbs, Inc. v. Johnson*, 50 NJ 528, 236 A2d 843 (1967)). That rule was subsequently adopted and applied in a number of real estate cases. *See, e.g., Red Carpet Real Estate v. Huygens*, 270 Or 860, 865, 530 P2d 46 (1974) ("plaintiff is not entitled to a commission unless and until the purchaser has completed the transaction in accordance with the terms of the earnest money agreement"); *Ward Cook, Inc. v. B-OK, Inc.*, 261 Or 227, 232, 493 P2d 136 (1972) (same); *Gibson Bowles, Inc. v. Montgomery*, 51 Or App 313, 317, 625 P2d 670 (1981) ("Ordinarily a broker is not entitled to a commission unless the sales transaction is completed."). Thus, if the sale does not close due to the financial inability of the buyer to perform, "the seller cannot be held for commission" because to do so would contravene the "fundamental intendment of the parties * * * that the owner will sell and the buyer will pay, and the broker will thus earn his commission out of the proceeds." *Setser*, 256 Or at 22 n 8 (quoting *Ellsworth Dobbs, Inc.*, 50 NJ at 552). Defendants focus on the phrase "out of the proceeds," arguing that once Paramount defaulted there were no longer any proceeds from which defendants were obliged to continue making commission payments.

■ Defendants' argument misconstrues the principle underlying *Setser*. That case emphasizes the closing date as the time at which a broker is entitled to payment for his or her services. At that point, the vendor and purchaser (or, in this case, the lessor and lessee) perform their respective obligations under the purchase contract or earnest money agreement—to pay the purchase price and to convey title—and thus consummate the transaction that the broker was hired

to facilitate. *Setser* teaches that a commission is not necessarily due when the parties enter into a binding contract to purchase, but only when the terms of *that contract* are consummated "by closing title in accordance with the provisions of the contract." 256 Or at 21. The court's discussion of the rule's application in the context of an installment contract demonstrates that point:

> "It should be emphasized that the adoption of this rule does not mean that the buyer must completely perform all of the terms of an installment contract of sale before the broker is entitled to his commission. Thus, if the buyer has done everything necessary under the contract to close the sale and there remains only the payment of future installments, the broker need not wait until the future installments are paid before he is entitled to his commission." *Id.* at 22.

The mere possibility of default on future payments that might nullify the purchaser's right to possession and title abrogates neither the character of the contract to purchase as fully completed nor the broker's concomitant right to the commission at that time. Thus, for example, an installment land sale contract is deemed completed and the commission on it due in full even though the purchaser rescinds after making only two payments. *Engelking v. Boyce*, 278 Or 237, 241, 536 P2d 703 (1977).

■     In the context of the lease transaction at issue here, plaintiff earned his commission when the action contemplated in the earnest money agreement between defendants and Paramount occurred, that is, when the actual lessor-lessee transaction closed. The earnest money agreement here is analogous to a contract to purchase, earnest money, or escrow agreement in a sales transaction. *See Woodworth v. Vranizan*, 273 Or 111, 117, 539 P2d 1055 (1975) (applying *Setser* rule to earnest money agreement). Here, the earnest money agreement was completed by execution of the lease, and plaintiff was entitled to payment in full at that time. The recital in the assignment of rent that the note was issued "as and for broker's fee due and owing" thus correctly states the status of the debt for which the note was issued as payment. Therefore, the claim underlying the promissory note was a valid claim; the note was issued for value; and the note was

therefore issued for consideration. The trial court erred in concluding otherwise.

■     Plaintiff next assigns error to the trial court's conclusion that there was no meeting of the minds between the parties. We assume that the court's conclusion refers to defendants' argument that their obligation to make payments on the note was contingent on their continued receipt of rent. As mentioned, however, no such condition appears on the face of the note or the associated documents, nor is there any indication in the record that the parties agreed to such a condition. The only evidence offered was one defendant's testimony that he expected the broker's fee would be deducted from payments made by the lessee. That testimony proves at most that defendants expected a portion of the monthly rent would go directly to plaintiff as payment on the commission. It does not prove that defendants expected payments on the commission to cease if rent payments ceased.

■     Nor, more importantly, does it prove that if defendants did have this expectation they communicated it to plaintiff or anybody else. Defendants' undisclosed misunderstanding of the legal effect of the contract, if they had one, is insufficient to undermine the clear and objective evidence of assent: defendants' signatures on the promissory note and their stipulation as to the authenticity of that note. As this court has stated:

> "Oregon courts adhere to an objective theory of contracts. *Harty v. Bye*, 258 Or 398, 403, 483 P2d 458 (1971). Under that theory, the trial court may receive and consider evidence as to the parties' subjective intentions and other circumstances surrounding the execution of a disputed provision. The trial court then is obliged to construe the provision in the light of that evidence, but in a manner that comports with the objectively reasonable construction of the terms to which the parties agreed." *Williams v. Wise*, 139 Or App 276, 281, 911 P2d 1261 (1996) (citations omitted).

Here, the express language of the parties' agreement, as shown by the promissory note and the assignment of rents, was that defendants would pay, by means of the rent assignment, $485 per month towards the $13,500 debt they owed to

plaintiff. That promise was unconditional, and defendants stipulated to the authenticity of the documents.

■      Finally, plaintiff assigns error to the trial court's conclusion *sua sponte* that defendants never effectively accepted Paramount's offer to lease the premises in the first place. We note initially that defendants never questioned the validity of the underlying lease and therefore never explained how its invalidity would relieve them of their obligation on the note. In any event, the conclusion is not supported by any evidence in the record. Defendants stipulated to the authenticity of the earnest money agreement, lease, assignment of rents, and promissory note, all of which were signed by defendants. Defendants accepted the lessee's offer when they signed the earnest money agreement. *See Real Estate Loan Fund v. Hevner,* 76 Or App 349, 355, 709 P2d 727 (1985) (signed letter manifesting acceptance of offer constituted binding acceptance). That defendants had accepted the offer to lease and considered the lease contract binding and operative is further shown by their acceptance of $86,120 in rental payments over the first 11 months of the lease before lessee's default.

Reversed and remanded for entry of judgment in favor of plaintiff.