Argued and submitted December 11, 2012, reversed and remanded
January 23, 2014

Taryn M. EMERSON,
*Plaintiff-Respondent,*

*v.*

Aaron S. KUSANO,
*Defendant-Appellant.*

Multnomah County Circuit Court
100812086; A149997

320 P3d 610

Douglas F. Foley argued the cause for appellant. With him on the briefs were Vernon S. Finley and Douglas Foley & Associates, PLLC.

Robert Wolf argued the cause and filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

Defendant appeals from a judgment entered after the trial court granted plaintiff's motion to reform the terms of an agreement settling plaintiff's personal injury action. Defendant contends that the trial court should have rescinded, rather than reformed, the agreement. We conclude that the trial court erred in reforming the contract and therefore reverse and remand.

The facts are undisputed. Plaintiff brought an action against defendant for personal injuries she sustained in an automobile accident, alleging damages of $171,000. The parties entered into settlement negotiations. On July 22, 2011, about one week before the scheduled trial date, an adjuster for defendant's insurer, Allstate Insurance, telephoned plaintiff's attorney and offered to settle the case for policy limits. In an e-mail to plaintiff's attorney on that same date, defendant's counsel stated, "just confirmed [with the Allstate adjuster] *we are tendering policy limits.*" (Emphasis added.) Also on July 22, 2011, the adjuster wrote to plaintiff's counsel:

> "I have completed an evaluation with regards to the above referenced party. Please be advised that *Allstate Insurance is tendering our policy limits of $50,000* inclusive of all. Please let me know how you wish to proceed on this matter."

(Emphasis added.) Plaintiff's counsel does not recall seeing that letter but does not dispute that he received it.[1]

Two days later, on July 24, 2011, plaintiff's counsel e-mailed defendant's counsel, asking, "Do you remember limits off hand?" Defendant's counsel responded by e-mail, "50." On July 26, plaintiff's counsel telephoned defendant's counsel and told him that plaintiff accepted Allstate's offer, but requested a 60-day set over of the trial date to obtain consent to the settlement from plaintiff's underinsurance (UIM) carrier. In response to plaintiff's counsel's request,

---

[1] Defendant's counsel contended below that the adjuster also sent plaintiff's counsel a copy of defendant's policy declaration page showing actual policy limits of $100,000, but the trial court explicitly rejected that representation as not credible, "because how could *** a specialist *** send a declaration page that says a hundred-thousand-dollar limit and in [a] letter it says $50,000."

on August 8, 2011, defendant's counsel e-mailed a copy of defendant's policy declarations sheet to plaintiff's counsel. It was at that time that plaintiff's counsel discovered that defendant's policy limits were in fact $100,000. Plaintiff's counsel sent an e-mail to defendant's counsel stating, "[W]e have a big problem."

It is not disputed that Allstate's misstatement of the policy limits was a good faith mistake and that both parties were mistaken as to policy limits. It is also undisputed that defendant was aware that plaintiff would present a claim to plaintiff's UIM carrier and would be seeking UIM benefits. Defendant was also aware that plaintiff's medical expenses exceeded $100,000.[2] But the practical effect of a settlement below Allstate's policy limits is that plaintiff's UIM policy (with limits of $500,000) would not cover any damages below defendant's policy limits of $100,000.

Plaintiff sought to obtain a settlement for the actual policy limits of $100,000, but Allstate declined. Plaintiff brought this action, seeking to reform the parties' settlement agreement to require Allstate to pay its policy limits of $100,000.

A claim for reformation of a contract requires proof of three elements: (1) an antecedent agreement to which the contract can be reformed; (2) a mutual mistake or a unilateral mistake on the part of the party seeking reformation coupled with inequitable conduct by the other party; (3) the party seeking reformation was not grossly negligent. *Jensen v. Miller*, 280 Or 225, 228-29, 570 P2d 375 (1977); *Pioneer Resources, LLC v. D. R. Johnson Lumber Co.*, 187 Or App 341, 364, 68 P3d 233, *rev den*, 336 Or 16 (2003). The elements of reformation must be proved by clear and convincing evidence. *Koennecke v. Waxwing Cedar Prod.*, 273 Or 639, 643, 543 P2d 669 (1975); *Pioneer Resources, LLC*, 187 Or App at 364.

In this case, it is undisputed that the second and third elements are present. The dispute, at trial and on appeal, concerns the first element: Was there an antecedent

---

[2] Defendant made this concession during argument before the trial court on plaintiff's motion to reform the parties' agreement.

agreement to which the contract could be reformed? Plaintiff asserted below that the key term of the parties' settlement agreement was that the settlement was for policy limits. Defendant asserted that the key term of the parties' settlement agreement was the settlement amount of $50,000. But rather than enforce the existing agreement, in view of the parties' mutual mistake, defendant asserted that there had been no "meeting of the minds" and that the agreement should be rescinded so that the case could go to trial. The trial court granted plaintiff's motion to reform the settlement agreement to policy limits of $100,000 and entered an order reforming the settlement agreement accordingly.

On appeal, defendant contends that the facts do not support the equitable remedy of reformation, because the parties had differing views of which term of the settlement agreement was significant: Allstate believed that it was settling plaintiff's claim for $50,000. Plaintiff believed that she was settling the claim for Allstate's policy limits. In that context, defendant contends, it is inequitable to reform the settlement agreement to require defendant to pay actual policy limits of $100,000, because that is not what defendant or plaintiff believed they were agreeing to. Rather, defendant contends, the agreement should be rescinded so that the case can be tried or the parties can reach a true settlement agreement.

Plaintiff responds that the agreement was not to settle for $50,000. Rather, in plaintiff's view, the material term of the parties' agreement was the settlement for "policy limits," and that the amount of the settlement was not essential—but merely a description of the essential term that turned out to be inaccurate and is subject to correction through reformation.

Both parties cite our standard of review as *de novo* and, historically, that would be correct. *Pioneer Resources, LLC* 187 Or App at 343. But in 2009, the legislature amended ORS 19.415(3)(b), making discretionary this court's *de novo* review of cases in equity other than those cases that involve the termination of parental rights. Or Laws 2009, ch 231, § 2. We exercise our discretion to review equitable cases *de novo* "only in exceptional cases." ORAP 5.40(8)(c). Here, the facts

are largely undisputed, and we further conclude that this is not an exceptional case where *de novo* review would be appropriate. We therefore review the trial court's legal conclusions for errors of law and are bound by the trial court's factual findings if they are supported by any evidence in the record. *Muzzy v. Uttamchandani*, 250 Or App 278, 280 P3d 989, *rev den*, 352 Or 341 (2012). The trial court did not make any explicit findings. In the absence of explicit findings, we assume that the trial court found the facts in a manner consistent with the legal conclusion it reached. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). We do not reweigh the evidence in reviewing the trial court's conclusion that there is clear and convincing evidence establishing the claim for reformation. *See OEA v. Oregon Taxpayers United*, 253 Or App 288, 304, 291 P3d 202 (2012) (so holding in reviewing an appeal from a judgment of contempt of court).

As noted, the only dispute on appeal concerns the first element of a claim for reformation—the existence of an antecedent agreement to which the contract can be reformed. And as noted, the trial court did not make any findings on that fact. Under our standard of review, then, the question narrows to whether there is evidence that would support a finding by the trial court on the "antecedent agreement" element that is consistent with the trial court's decision to reform the contract. Thus, there must be evidence that the trial court could find clear and convincing that there was an antecedent agreement to settle for policy limits, *i.e.*, that the parties had an agreement to settle for actual policy limits rather than for a specific dollar amount.

We cannot say that there is evidence that the trial court could find to be clear and convincing that the parties had an agreement to settle for policy limits, rather than for a specific settlement amount. There is evidence that it was important to plaintiff to settle for policy limits and that, because of plaintiff's excellent UIM coverage, as long as the settlement was for policy limits, the exact dollar amount of the settlement was not material to plaintiff, even if it was less than plaintiff's total damages. There is evidence that defendant's counsel and Allstate were aware that settling for policy limits was important to plaintiff and that both

plaintiff and defendant believed the settlement was for policy limits. But there is no evidence that defendant would have settled for more than $50,000, let alone for $100,000, had it been aware of the actual policy limits. And there is also no evidence that the actual amount of the settlement was immaterial to defendant. So, there is no evidence that defendant would have settled for policy limits if it had known that those limits were $100,000.

Oregon subscribes to an objective theory of contracts. *Newton/Boldt v. Newton*, 192 Or App 386, 392, 86 P3d 49, *rev den*, 337 Or 84 (2004), *cert den*, 543 US 1173 (2005). Neither defendant's subjective understanding that the settlement was for $50,000 nor plaintiff's subjective understanding that the settlement was for the policy limits controls. *Bagley v. Mt. Bachelor, Inc.*, 258 Or App 390, 401-02, 310 P3d 692 (2013), *rev allowed*, 354 Or 699 (2014). The question is whether the evidence objectively establishes the terms of an antecedent agreement. There is evidence that both parties mistakenly understood that policy limits were $50,000, but there is no evidence that the parties had an agreement as to what the settlement would have been had the parties been aware of the actual policy limits. For these reasons, we conclude that there was no evidence that the trial court could find clear and convincing that the parties had an antecedent agreement to settle for policy limits of $100,000. The trial court therefore erred in reforming the contract to those terms.

Defendant concedes that a settlement agreement for $50,000 also is not enforceable. We therefore remand for further proceedings not inconsistent with this opinion.

Reversed and remanded.