Argued and submitted September 15, 2015, affirmed August 31, 2016

Lorri L. BISHOP,
an individual,
*Plaintiff-Appellant,*

*v.*

Glesty WATERS,
aka Sam Waters, an individual;
and Donna Waters, an individual,
*Defendants-Respondents.*

Washington County Circuit Court
C120002CV; A155233

380 P3d 1114

D. Charles Bailey, Jr., Judge.

Cynthia K. McNeff argued the cause and filed the brief for appellant.

John J. Tyner III filed the brief for respondents.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.*

* Hadlock, C. J., *vice* Nakamoto, J. pro tempore.

## TOOKEY, J.

Plaintiff appeals a judgment dismissing her claims against defendants in an action pertaining to a contract for the sale of real property. The issues before us are: (1) whether the trial court erred in ruling that plaintiff was not entitled to rescind her land-sale contract with defendants in the circumstances presented by this case, and (2) whether plaintiff complied with certain statutory requirements related to her claim for financial abuse of a vulnerable person, ORS 124.100. We reach the following conclusions on those issues. First, assuming, without deciding, that plaintiff at some point had a statutory right to rescind her agreement with defendants because they did not provide her with a disclosure statement, the right terminated when plaintiff signed the installment land sales contract. Second, the trial court did not err in dismissing, without prejudice, plaintiff's claim for financial abuse of a vulnerable person, where plaintiff failed to serve the Attorney General with a copy of her complaint "within 30 days after the action *** commenced." ORS 124.100(6). Accordingly, we affirm the trial court's judgment.

We recite the facts in a manner consistent with the trial court's legal conclusions. *Emerson v. Kusano*, 260 Or App 577, 581, 320 P3d 610 (2014). Plaintiff is a permanently disabled woman who suffers from chronic pain due to injuries that she suffered in a 1985 automobile accident. Defendants, the Waters,[1] are a married couple who owned a parcel of real property that included a manufactured home. In late August or early September 2010, defendants became acquainted with plaintiff through Mr. Waters' automobile sales and repair business. Plaintiff brought her automobile to the repair business on multiple occasions and, during these visits, she informed Mr. Waters that she was thinking of purchasing a home, because the one she was currently living in had been sold in a short sale and she had received $50,000 in inheritance money that could be used toward a home purchase. Mr. Waters told plaintiff that he had a parcel of property for sale with a manufactured home on it, and he offered to show the land and home to her. After

---

[1] We refer to defendants, individually, as Mr. Waters and Mrs. Waters.

viewing the property, plaintiff agreed to buy the property with a down payment of $37,000.[2] Plaintiff paid the $37,000 on September 7, and, on October 2, plaintiff and defendants signed a contract, the terms of which included certain preprinted form language and some handwritten provisions set forth below.

Underneath a preprinted heading, the contract provided the following handwritten provisions:

"[Plaintiff] is partners with [defendants] for the [purchase] of their home * * * for the sum of $108,000.00 at $37,000.00 down/paid 9-07-10/ a balance of $71,000.00. [Plaintiff] will assume payments of $788.00 a month until loan is paid in full. Maturity date is May 1, 2028. Interest Rate is 7.25%. Payment includes taxes that are escrowed.

"Payment on house due on the 1st of each month."

The contract further provided, in preprinted type:

"No modification of this Contract will be effective unless it is in writing and is signed by both parties. This Contract binds and benefits both parties and any successors and assigns. Time is of the essence of this Contract. This document, including any attachments, is the entire Contract between the parties. This Contract is governed by the laws of the State of Oregon."

Plaintiff moved into the home on or about October 31, 2010. As the trial court's rulings implicitly suggest, the contract was an installment land sales contract.[3]

At the time that plaintiff signed the contract, her income consisted of monthly Social Security disability

---

[2] The record indicates that plaintiff had spent most of the remainder of her $50,000 inheritance on the purchase of an automobile.

[3] *Thompson on Real Property* explains:

"Under the installment land sales contract, the property is sold for the payment of the purchase price in a series of installments over time. * * * The transaction involves the transfer of title to real property, and the elements of the transaction are controlled by the terms of the contract between the vendor and the purchaser.

"* * * [I]n the installment sales contract the relationship between the vendor and purchaser may continue for several years before title is ultimately transferred."

David A. Thomas ed., 12 *Thompson on Real Property, Second Thomas Edition* § 100.01 (2008).

payments of $674. Defendants were aware that plaintiff was unable to work because of her chronic pain and, during the discussions about purchasing the home, defendants told plaintiff that she could work at defendants' automobile parts business to make some extra income. However, after plaintiff took possession of the home, the employment never materialized. Plaintiff's utility bills for the home were significantly more than she had expected and, in April, plaintiff notified defendants, through her attorney, that she was "rescinding the Contract based on ORS 124." After making only three payments of $700 each, plaintiff moved out of the home in June 2011.

Plaintiff brought this action against defendants in January 2012, alleging claims of breach of contract, fraud, conversion, emotional distress, and financial abuse of a vulnerable person. In December 2012, plaintiff filed a first amended complaint, alleging common-law rescission, "rescission of contract pursuant to ORS 105.475," fraud, and financial abuse of a vulnerable person. Before trial, the court dismissed without prejudice, plaintiff's claim of financial abuse of a vulnerable person, because plaintiff had not sent a copy of her complaint to the Attorney General within 30 days of filing the complaint. Plaintiff's remaining claims were tried to the court. After hearing the evidence, the court ruled that plaintiff had not proved any of her remaining claims, and entered judgment in favor of defendants.[4] Plaintiff appeals the judgment and assigns error to the dismissal of her claims made pursuant to ORS 105.475 and ORS 124.100. We begin with addressing plaintiff's claim related to rescission.

## RESCISSION CLAIM

Oregon law requires the sellers of real property to issue property disclosure statements under certain circumstances. ORS 105.462 to 105.490. Under ORS 105.475(4), "[i]f the seller fails or refuses to provide a seller's property disclosure statement as required under this section, the buyer shall have a right of revocation until the right is terminated." That right is terminated, pursuant to

---

[4] The court also dismissed defendants' counterclaim for breach of contract.

ORS 105.475(3), "[i]f a buyer closes the transaction." ORS 105.465(2) provides that the seller's disclosure statement is to be given "to each buyer who makes a written offer to purchase real property in this state."

The parties both assume that ORS 105.475 applies to their installment land sales contract; as discussed below, their arguments about whether defendants were obligated to provide a disclosure statement turn solely on their competing contentions about whether their real property transaction had "closed." According to plaintiff, under ORS 105.475(3), her right to "rescind" the contract for defendants' failure to provide a disclosure statement was not terminated until the property transaction "closed" and, because title had not transferred to her, and title would not transfer to her until a date approximately 17 years in the future, the property transaction would not close until the date that title was transferred. Thus, according to plaintiff, because defendants had not given her a seller's disclosure statement, she could "rescind" her contract, pursuant to ORS 105.475(4), at any time before title was transferred. Defendant responds that the transaction "closed," for purposes of ORS 105.475(3), when the parties signed the contract and, therefore, plaintiff no longer had a right to rescind.

Plaintiff's argument reduces to a contention that a sale of real property *never* closes until the entire sales price has been paid and title has transferred to the purchaser. In light of that limited argument, we stress what we are *not* deciding in this case. *First*, we do not decide under what circumstances, if ever, the provisions of ORS 105.475 apply to installment land sales contracts. *Second*, we do not decide what it means for an installment land sales contract to "close" for purposes of ORS 105.475(3). Rather it is sufficient for us to address plaintiff's argument on its terms, that is, to decide whether plaintiff is correct in arguing that a real property transaction never closes until the entire price has been paid and title has transferred to the purchaser. For the reasons set out below, we conclude that plaintiff is incorrect.

Oregon courts have already recognized that, at least in some circumstances, an installment land sales contract "closes" when it is signed. *Gearhart v. Goehner*, 74 Or App

95, 97, 701 P2d 461, *rev den*, 300 Or 332 (1985); *see Setser v. Commonwealth, Inc.*, 256 Or 11, 22, 470 P2d 142 (1970) (a broker is entitled to the broker's commission "when the buyer has done everything necessary under the contract to close the sale and there remains only the payment of future installments"); *see also Engelking v. Boyce*, 278 Or 237, 240-41, 563 P2d 703 (1977) (holding the same); *Hildebrandt v. Anderson*, 180 Or App 192, 198, 42 P3d 355 (2002) (holding the same). By necessary implication, then, such transactions may "close" long before the last payment is made and title transfers. Consequently, and contrary to plaintiff's argument, a "closing" of a property transaction does not, in every instance, depend on title being transferred. Because plaintiff's contention that she was entitled to rescind the contract depends on us accepting that incorrect proposition, her argument presents no reason for us to disturb the trial court's judgment.

## FINANCIAL ABUSE OF A VULNERABLE PERSON CLAIM - ORS 124.100

Plaintiff also assigns error to the trial court's dismissal of her claim for financial abuse of a vulnerable person. ORS 124.100(2) provides:

"A vulnerable person[5] who suffers injury, damage or death by reason of physical abuse or financial abuse[6] may

---

[5] ORS 124.100(1)(g) defines a "vulnerable person" as:

"(A) An elderly person;

"(B) A financially incapable person;

"(C) An incapacitated person; or

"(D) A person with a disability who is susceptible to force, threat, duress, coercion, persuasion or physical or emotional injury because of the person's physical or mental impairment."

[6] ORS 124.110 provides:

"(1) An action may be brought under ORS 124.100 for financial abuse in the following circumstances:

"(a) When a person wrongfully takes or appropriates money or property of a vulnerable person, without regard to whether the person taking or appropriating the money or property has a fiduciary relationship with the vulnerable person.

"(b) When a vulnerable person requests that another person transfer to the vulnerable person any money or property that the other person holds or controls and that belongs to or is held in express trust, constructive trust or resulting trust for the vulnerable person, and the other person, without good

bring an action against any person who has caused the physical or financial abuse or who has permitted another person to engage in physical or financial abuse."

ORS 124.100(6) provides:

"A person commencing an action under this section must serve a copy of the complaint on the Attorney General within 30 days after the action is commenced."

At the time of trial, plaintiff had sent a copy of her original complaint to the Attorney General, albeit more than 30 days after she had filed her action against defendants, and she had yet to send a copy of her first amended complaint to the Attorney General. Defendants argued that the notice requirement in ORS 124.100(6) was jurisdictional and the trial court was required to dismiss plaintiff's claim. The trial court concluded that plaintiff's failure to meet the requirements of ORS 124.100(6) meant that plaintiff could not "avail [herself] of this particular statute," and dismissed plaintiff's claim for financial abuse of a vulnerable person, without prejudice. Plaintiff acknowledges that she did not meet the notice requirements of ORS 124.100(6), but argues that the statute does not impose a jurisdictional requirement or otherwise indicate any consequence for the failure to give notice to the Attorney General.

To determine whether a failure to meet the notice requirements under ORS 124.100(6) requires dismissal, we again follow our statutory interpretation methodology, and consider first the text and context of ORS 124.100(6).[7] In

cause, either continues to hold the money or property or fails to take reasonable steps to make the money or property readily available to the vulnerable person when:

"(A) The ownership or control of the money or property was acquired in whole or in part by the other person or someone acting in concert with the other person from the vulnerable person; and

"(B) The other person acts in bad faith, or knew or should have known of the right of the vulnerable person to have the money or property transferred as requested or otherwise made available to the vulnerable person.

"(c) When a person has at any time engaged in conduct constituting a violation of a restraining order regarding sweepstakes that was issued under ORS 124.020."

[7] *See State v. Cloutier*, 351 Or 68, 75, 261 P3d 1234 (2011) (In interpreting a statute, we consider "the text of the statute in its context, along with relevant legislative history, and, if necessary, canons of construction.").

reviewing the text of a statute, we give "words of common usage *** their plain, natural, and ordinary meaning." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993).

The statutory text states that a person commencing an action *"must* serve a copy of the complaint" to the Attorney General. (Emphasis added.) Among the many meanings of the verb "must," *Webster's Third New Int'l Dictionary* 1492 (unabridged ed 2002) defines the word as "an imperative need or duty" or "obligation, requirement." *See Loucks v. Beaver Valley's Back Yard Garden Products*, 274 Or App 732, 735, 362 P3d 277 (2015) ("We may turn to dictionaries in order to determine the plain, natural, and ordinary meaning of a word."). In *Oregon Cable Telecommunications v. Dept. of Rev.*, 237 Or App 628, 635, 240 P3d 1122 (2010) (citations omitted), we said that "the verb 'must' *** can carry a variety of shaded meanings, ***, [but] generally connotes a required action when used in law." Similar to the word "shall," the word "must," ordinarily expresses "a duty, obligation, requirement, or condition precedent." *State v. Conger*, 319 Or 484, 503, 878 P2d 1089 (1994) (Unis, J., dissenting). Thus, the use of the verb "must" in this statute indicates the legislature's intent to make mandatory service of a copy of the complaint on the Attorney General "within 30 days after the action is commenced."

Plaintiff nevertheless argues that, even if notice is mandatory under the statute, "there is no suggestion in the statute that makes the giving of that notice jurisdictional." Defendants do not respond directly to that argument, instead contending that, in light of plaintiff's acknowledgement that the purpose of the statute is to allow the Attorney General to intervene in an action, plaintiff should not have waited approximately nine months to send the Attorney General notice of her complaint. Defendants also argue that plaintiff has not been harmed by the court's dismissal of the action, because she could have filed a new complaint and complied with the notice requirement.

We agree with plaintiff that the notice requirement was "not, in the usual sense, 'jurisdictional'[.]" *Sizemore v. Myers*, 327 Or 71, 74-75, 957 P2d 577 (1998); *see Scott v. Dept.*

*of Rev.*, 358 Or 795, 805-06, 370 P3d 844 (2016) (failure to file a statutorily required affidavit did not require dismissal for lack of jurisdiction of taxpayer's complaint challenging deficiency assessments); *see also Warren v. City of Canby*, 56 Or App 230, 233-34, 641 P2d 615 (1982) (failure to provide notice to Attorney General as required by statute was not a "jurisdictional defect," but notice was a "condition precedent to the trial court's proceeding to final disposition of the case").[8] The failure to give the required notice did not deprive the court of subject matter or personal jurisdiction "in the usual sense." *Sizemore*, 327 Or at 74. Plaintiff is also correct that the failure to comply with a statutorily required procedure is not always fatal to a claim. *Scott*, 358 Or at 805-06.

In determining whether the failure to provide a statutorily required notice requires dismissal, courts look to the context and underlying purpose of the requirement. *See Sizemore*, 327 Or at 74-75 (in a petition for review of a ballot title, failure to provide statutorily required notice to Secretary of State was fatal to ballot title challenge, because statutory context showed that the notice requirement was aimed at securing speedy resolution of a ballot title challenge). In this case, nothing in the text of ORS 124.100(6) specifically requires dismissal for the failure to meet the notice requirement. Nevertheless, we conclude that the statutory context of ORS 124.100(6) shows that ORS 124.100 is part of a legislative scheme that encompasses the investigative and law enforcement authority of the Attorney General for the protection of the individual vulnerable person and the public, and that the legislature did not intend for a claim under ORS 124.100 to proceed in isolation of the Attorney General's notification. We therefore conclude that the failure to provide the required statutory notification requires dismissal.

---

[8] In *State v. Granberry*, 260 Or App 15, 18 n 3, 316 P3d 363 (2013), we explained that a difference existed between the court's "jurisdiction" over the defendant and the case, and the court's scope of "authority" to adjudicate particular issues under the pertinent statute. In this case, the parties appear to confuse the scope and limitation of the court's "authority" for a claim brought pursuant to the provisions of ORS 124.100 with the court's "jurisdiction" over the parties and the subject matter of the claim.

ORS 124.125[9] outlines the Attorney General's authority and interest in claims brought under ORS 124.100. In addition to the private right of action provided by ORS 124.100, ORS 124.125 describes various means by which the Attorney General may assert the state's interest in preventing and punishing financial misconduct against a "vulnerable person." Those means include authorizing the Attorney General to (1) bring a separate action against the person allegedly committing abuse, ORS 124.125(1), (2) intervene in the private action, ORS 124.125(2), or (3) require anyone with information regarding the alleged abuse, including the

---

[9] ORS 124.125 provides, in pertinent part:

"(1) The Attorney General, the Department of Human Services, a type B area agency, a designee or a district attorney may bring an action against a person who engages in conduct described in ORS 124.105 and 124.110. In addition to remedies otherwise provided in ORS 124.100 to 124.140, upon prevailing in the action, the court shall award to the Attorney General, Department of Human Services, type B area agency, designee or district attorney costs of investigation and penalties. Penalties awarded under this section may not exceed $25,000 per occurrence.

"(2) The Attorney General may intervene in a civil action brought under ORS 124.100 if the Attorney General certifies that, in the opinion of the Attorney General, the action is of general public importance. In the action, the state is entitled to the same relief as if the Attorney General instituted the action under the provisions of this section.

"(3) When it appears that a person is engaging in conduct described in ORS 124.105 or 124.110, the Attorney General, a district attorney, an attorney representing a type B area agency or a designee may execute in writing and cause to be served an investigative demand upon a person who is believed to have information, documentary material or physical evidence relevant to the alleged or suspected violation. The investigative demand shall require the person, under oath or otherwise, to appear and testify, to answer written interrogatories or to produce relevant documentary material or physical evidence for examination, at a reasonable time and place as stated in the investigative demand.

"* * * * *

"(6) If a person, after being served with an investigative demand under subsection (3) of this section, fails or refuses to obey an investigative demand issued by the Attorney General, a district attorney, an attorney representing a type B area agency or a designee, the Attorney General, district attorney, attorney representing a type B area agency or designee may, after notice to an appropriate court and after a hearing, request an order:

"(a) Granting injunctive relief to restrain the person from engaging in conduct that is involved in the alleged or suspected violation; or

"(b) Granting other relief as may be required, until the person obeys the investigative demand.

"(7) Disobedience of a final order of a court under subsection (6) of this section shall be punished as a contempt of court."

alleged wrongdoer, to comply with an investigative demand on the matter, ORS 124.125(3) and (6).

Plaintiff argues that those provisions indicate that the sole purpose of the notice requirement is "to provide an opportunity to the Attorney General to become involved if the issues are widespread * * *, [but] not to create a defense to someone who has engaged in elder abuse." We agree with plaintiff that the notice requirement is not intended as a defense against a plaintiff's private action. But the statutory context shows that the provisions relating to rights of action do not exist only to protect a plaintiff's private claim. ORS 124.100 and ORS 124.125 together provide a means of punishing and preventing abuse by creating rights of action for two different entities—the vulnerable person who suffered the financial harm and the Attorney General, who represents the public's interest in punishing and preventing financial abuse of all vulnerable persons in this state.

The provisions of ORS 124.125, combined with the notice requirement of ORS 124.100(6), indicate the legislature's intent to provide an effective means by which the Attorney General can be quickly apprised of a plaintiff's complaint of alleged financial abuse, so that the Attorney General may determine whether or not to join in the plaintiff's action, choose another option available under ORS 124.125, or choose no action at all. *See Sizemore*, 327 Or at 75 (notice provision is aimed at securing a speedy resolution to ballot title challenge).

Furthermore, plaintiff's claim is one created by statute. In creating the private right of action, the legislature also created the bases upon which the claim is allowed to proceed. *See Sizemore*, 327 Or at 74 (ballot title review proceedings are a "creature of statute" and the bases upon which the right to review is allowed are prescribed by statute). ORS 124.100(6) is stated in mandatory terms and predicates a plaintiff's ability to maintain a private right of action for financial abuse on notice to the Attorney General "within thirty days after the action commenced." By predicating the maintenance of the action on that requirement, the legislature limited the court's authority to hear the claim to cases in which the notice requirement has been

met. *See Sizemore*, 327 Or at 74 (holding that the court's authority in the statutory-based ballot title review "extends only to those cases in which the statutory prerequisites to review have been satisfied"). We conclude, for all of those reasons, that the notice requirement in ORS 124.100(6) is mandatory and that dismissal of the claim is required when the notice requirement is not met.[10] Consequently, the trial court did not err in dismissing plaintiff's claim for financial abuse of a vulnerable person.

Affirmed.

---

[10] We note plaintiff acknowledged in oral argument that she could file a new complaint and comply with the notice requirement of ORS 124.100(6). Consequently, the purpose of the notice requirement may still be served.